THE ATTORNEY-GENERAL, EX REL. HUDSON COUNTY QUARTER SESSIONS, PLAINTIFF IN ERROR, v. WILLIAM P. VERDON, DEFENDANT IN ERROR.

Argued November 29, 1916—Decided October 11, 1917.

1. A proceeding in contempt, the sole purpose of which is the punishment of the alleged contemner, and the vindication of the dignity and authority of the court, is not reviewable by an appellate tribunal, in the absence of legislative authority, except for lack of jurisdiction in the court in which the proceeding is had.

2. Section 2 of "An act providing for the review of conclusions and judgments for contempt of court" . (*Pamph. L.* 1884, *p.* 219; *Comp. Stat., p.* 1736, § 138), makes it mandatory upon the Supreme Court in all appeals taken thereunder to rehear the matter of contempt upon which the conviction was founded, *de novo,* both upon the law and upon the facts.

3. A person who has been proceeded against in a court of law in this state, on a charge of contempt, the sole purpose of. the proceeding being to punish the alleged contemner and vindicate the dignity and authority of the court, is not, as a matter of right, entitled to have the procedure conducted by the submission of interrogatories.

On error to the Supreme Court, whose opinion is reported *eo nomine, In re Verdon,* 89 *N. J. L.* 16.

For the plaintiff in error, *George T. Vickers,* assistant prosecutor of the pleas, and *Robert H. McCarter.*

For the defendant in error, *Harlan Besson* and *Merritt Lane.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. William P. Verdon, the defendant in error, was adjudged by the Hudson County Quarter Sessions to be guilty of a contempt of that court, by reason of certain newspaper publications reflecting upon it, and tending to bring it into disrepute. The proceeding was instituted by a rule to show cause. At the hearing upon the return of this rule Verdon appeared and insisted that the court

should not proceed against him by the taking of testimony to try the question of contempt, but should submit interrogatories to him for his answers thereto. His claim was overruled, and witnesses were called and examined by the assistant prosecutor over his objection, whereupon Mr. Verdon announced that he elected to stand mute. At the close of the testimony the judgment of the court was pronounced and thereupon Verdon appealed to the Supreme Court, "in accordance with the statute in such case made and provided," to review the judgment against him both upon the law and the facts. Upon the hearing of the appeal the Supreme Court considered that the Quarter Sessions in refusing to submit interrogatories to Verdon, violated a fundamental right vested in him; that in proceeding to judgment in disregard of that right it exceeded its jurisdiction; and thereupon ordered that the judgment of the Quarter Sessions be set aside, and for nothing holden, and that the record be remitted. From the judgment entered upon this order the attorney-general appeals.

A proceeding in contempt, the sole purpose of which is the punishment of the alleged contemner, and the vindication of the dignity and authority of the court, is not reviewable by an appellate tribunal, in the absence of legislative authority, except for lack of jurisdiction in the court in which the proceeding is had. *Seastream* v. *New Jersey Exhibition Co., 72 N. J. Eq.* 377. This principle is equally applicable to common law courts and to equity tribunals; and where a person adjudged guilty of contempt in a court of law seeks to review the judgment upon the ground of want of jurisdiction, the proper means for obtaining such review is by taking out a *certiorari* from the appellate tribunal. *Croasdale* v. *Quarter Sessions, 88 N. J. L.* 506; 89 *Id.* 711.

In 1884, however, the legislature enacted a law entitling the person adjudged to be guilty of contempt by a court of law inferior in its jurisdiction to the Supreme Court, to appeal to the Supreme Court for a review thereof both on the law and the facts (*Comp. Stat., p.* 1736); and this is the statute under which Verdon sought a review in the present

case. Section 2 of the act provides the method of procedure to be followed by the Supreme Court in all appeals taken under it. The legislative mandate is that upon the petition of a person convicted of contempt by any court of law inferior in its jurisdiction to the Supreme Court, he may have that conviction immediately certified and sent to the latter tribunal, together with all proceedings touching the same, and then, declares that the Supreme Court "shall be invested with jurisdiction, and *required* to *rehear* the matter of contempt upon which the conviction was founded, both upon the law and upon the facts, which shall be inquired into and ascertained by depositions, or in such other way or manner as the court above shall direct; and it shall be required to give such judgment in the premises as to it shall seem to be lawful and just under all the circumstances of the case, to be enforced in such way and manner as it shall order and direct."

The manifest purpose of the act is to afford the appellant a trial *de novo* both upon the law and the facts, before an entirely impartial tribunal.

It is, of course, true that if in pronouncing the judgment complained of by him the Court of Quarter Sessions overstepped its jurisdiction, Verdon would have been entitled to review the judicial action by *certiorari*. *Croasdale* v. *Quarter Sessions, supra*. But it is equally true that it was within his election to avail himself of the benefit given him by the statute of 1884, and have the question of the truth of the charge laid against him tried out and determined in the manner provided by the statute, by a tribunal which had no interest in the matter involved; and, having made that election, the attorney-general was entitled to hold him to it. The action of the Supreme Court in remitting the record to the Quarter Sessions in order that the case might there be retried, was, as it seems to us, in disregard both of the right of Mr. Verdon to have an adjudication by the appellate tribunal on the law and the facts, and also in disregard of the right of the attorney-general, to have Mr. Verdon held to the election which he had made.

The failure of the Supreme Court to proceed under the statute requires a reversal of its judgment, and a remission of the record to it in order that it may, in the language of the statute, *rehear* the matter of contempt upon which the conviction was founded, both upon the law and upon the facts, by the taking of depositions, or in such other way or manner as it shall deem advisable, and render such judgment thereon as shall seem to it to be lawful and just under all the circumstances of the case.

On account of the importance of this matter, not only to the defendant, but to the public generally, we deem it proper to say that we are not in accord with the view of the Supreme Court that a person who has been proceeded against in a court of law in this state, on a charge of contempt, the sole purpose of the proceeding being to punish the alleged contemner and vindicate the dignity and authority of the court, is entitled, as of right, to have the procedure conducted by the submission to him of interrogatories, in accordance with the practice existing at common law. In fact, in this state no settled practice seems to exist. As was said by Mr. Justice Dixon, *In re Cheeseman,* 49 *N. J. L.* 115, 143, sometimes a rule to show cause has been allowed without an affidavit on a mere suggestion; sometimes an attachment has been issued without a rule to show cause; sometimes punishment has been inflicted forthwith on the offender's confession, when brought in by the writ, without interrogatories; and sometimes the penalty has been imposed on the offender's admissions made under the original rule, without either writ or interrogatories. Having pointed out the unsettled state of the practice, Mr. Justice Dixon then declared (and in this declaration we fully concur) that "these various steps are manifestly not jurisdictional, except to the extent of laying before the court matters which constitute a contempt, and affording the party accused a fair opportunity of denying or confessing their truth."

Mr. Verdon had that opportunity afforded him. Instead of taking advantage of it, and either confessing or denying the truth of the charge against him, he saw fit to stand mute. Having so elected it cannot be said with any justice that he

was deprived of a fundamental right. Nor could he, by adopting the course pursued by him, inject into the case the question of the effect to be given to his denial of the charge, in case he had made such denial—that is, whether such denial would have been conclusive of the matter in issue. The Court of Quarter Sessions having afforded him full opportunity to deny the charge against him, and he having declined to avail himself of that opportunity, the court was entirely within its jurisdiction in proceeding to judgment on the testimony which had been submitted to it.

One other matter remains to be referred to. Although we are not called upon to pass upon the conclusiveness to be given, in the court of first instance, to the alleged contemner's denial of the charge laid against him, it is important that we should express our opinion of its effect when made upon the retrial of the matter in the Supreme Court. The act of 1884 not only prescribes the procedure to be adopted, but, by necessary inference, the effect to be given to the evidence, including that of the alleged contemner. The court is to determine the truth of the charge by depositions taken, or in such other way as it may deem just and proper. That is to say, it was the legislative intent that the very truth of the matter should be determined by the appellate court, and that judgment should be rendered accordingly, the same weight to be given to the testimony of the appellant as would be given to it in any ordinary legal procedure.

The judgment under review will be reversed, and the record remitted to the Supreme Court, to be there proceeded with as above indicated.

KALISCH, J. (dissenting). I have reached the conclusion that the appeal should be dismissed upon the fundamental ground that no appeal lies from the Supreme Court to this court, in a proceeding for contempt, where, as in this case, the proceeding is purely to punish the contemner for the purpose of vindicating the dignity of the court. *Dodd* v. *Una*, 40 N. J. Eq. 672, 715.

The case cited is valuable to illustrate the inflexibility of the common law rule that no appeal was countenanced in a proceeding for contempt where the sole purpose was to punish the contemner for contumacious conduct. And that learned jurist, Mr. Justice Depue, emphasized the common law on the subject (on *p.* 718) when he said: "If the case brought up was capable of being treated as the action of the Chancellor taken with a view simply of vindicating the dignity of his court, I would vote to dismiss the appeal." If it will be borne in mind that in that case the appeal was founded on the claim that the order contemned was one without the jurisdiction of the Chancellor to make, it becomes at once manifest that the line of demarcation which Judge Depue draws between the appealability of a proceeding in contempt, the object of which is to afford a method of relief *inter partes,* and where it is of a criminal nature to punish contemptuous conduct in the presence or with respect to the authority or dignity of the court, is both logical and sound. But this is on the assumption that the court whose jurisdiction is challenged had general jurisdiction of the subject-matter and of the party proceeded against.

In *Frank et al.* v. *Herold,* 64 *N. J. Eq.* 371, the appellants were adjudged guilty of a contempt and were fined and sentenced to imprisonment for a period of sixty days, by the Court of Chancery, for willfully violating a restraining order of that court. The appeal was dismissed by this court upon the ground that the proceedings were punitive in their character, taken solely for the purpose of vindicating the authority and dignity of the court, and were, consequently, not reviewable. And, in the later case of *Seastream* v. *New Jersey Exhibition Co.,* 72 *N. J. Eq.* 377, decided in 1906, this court, speaking through the present learned Chief Justice (on *p.* 378), said: "The proceeding was instituted solely for the purpose of punishing alleged contemners, to vindicate the dignity and authority of the court. Such a proceeding is not reviewable by an appellate tribunal, except for lack of jurisdiction in the court in which the proceeding is had."

This language obviously refers to the court exercising original jurisdiction whose authority or dignity has been contemned, and not to an appellate court invested by the legislature with authority to review contempt of inferior courts.

And it was evidently with this situation in view that the legislature, in 1909, passed the remedial statute conferring upon a person or corporation adjudged in contempt by the Court of Chancery, for acts done or omitted elsewhere than in the presence of the court, the right of appeal from such adjudication to this court. *Comp. Stat., p.* 452, § 113a.

Although the cases referred to arose in the equity branch, nevertheless they are in point on the question discussed, for the reason that the legal principle governing an appeal in contempt cases, except as modified by statute, is the same as on the law side. But before leaving this topic it is well to allude here to the fact that the legislature, in 1884, enacted a statute by which an appeal is given, in a proceeding for contempt, except from the Orphans' Court to the Prerogative Court. This statute will be dealt with *in extenso* later on, for it is upon the construction to be given to it in conjunction with the common law that the present case must turn.

From what has been said it is apparent that there is no legal difficulty in agreeing to the proposition laid down by the learned Chief Justice, in the prevailing opinion, that a proceeding for contempt, the sole purpose of which is the punishment of the alleged contemner, and the vindication of the dignity of the court, is not reviewable, except for lack of jurisdiction in the court in which the proceeding is had, if, by the term "for lack of jurisdiction," is meant want of jurisdiction in the court of the party or subject-matter, or of both.

But where the court, in its constitution, has power to punish for contempt, its decision is final and conclusive. *Dodd* v. *Una,* 40 *N. J. Eq.* 715. The opinion of this court proceeds upon the theory that the lack of jurisdiction, in the present case, was not in the court of first instance, in which Verdon was adjudged guilty of contempt, but in the Supreme Court, to which court Verdon appealed, and which latter

court reversed the judgment appealed from. I cannot accede to this.

The position taken by the court necessarily brings into consideration the scope and meaning of the statute of 1884. 2 *Comp. Stat., p.* 1736, §§ 138, 139.

Section 138 provides that every summary conviction and judgment by any court inferior in its jurisdiction to the Supreme Court, except an Orphans' Court, for a contempt against its own dignity, peace and good order shall be reviewable, both upon the law and upon the facts by the Supreme Court.

It is clear that the broad language here employed invests the Supreme Court with general jurisdiction to review a conviction and judgment for contempt of a court inferior to it, as designated by the statute.

If this section stood alone there could be no question that the jurisdiction conferred is to be exercised in accordance with the common law power of the court relating to the review of a judgment from an inferior court. I am unable to find anything in section 139 which abridges the exercise of the general jurisdiction conferred. A brief consideration of the section will make the matter plain. It is to be observed that this section relates to the procedure to be pursued by a person who has been convicted and adjudged in contempt, in appealing from such conviction and judgment. It provides that the person adjudged in contempt upon filing a petition, signed by at least two counselors, may have his conviction and judgment certified to and sent to the Supreme Court; that the Supreme Court "shall be invested with jurisdiction and required to rehear the matter of contempt upon which the conviction was founded, both upon the law and upon the facts, which shall be inquired into and ascertained by depositions, or in such other way or manner as the court above shall direct; and it shall be required to give such judgment in the premises as to it shall seem to be lawful and just under all the circumstances of the case, to be enforced in such a way and manner as it shall order and direct."

. In the enactment of the statute the legislature obviously had in view two classes of contempt—*first,* contempts committed in the presence of the court in which case the proceedings are of the most summary nature and are conducted orally; *secondly,* contempts committed out of the presence of the court, in which the proceedings are by attachment against, and the submission of written interrogatories, to the alleged contemners. This difference of procedure in the two kinds of contempt was clearly in the legislative mind as evidenced by the provision in section 139, which requires the Supreme Court to rehear the matter of contempt upon which the conviction was founded both upon the law and upon the facts, to be inquired into and ascertained by depositions, or in such other way or manner as the court above shall direct. Such a method of procedure, obviously, was aimed at an appeal from a conviction and judgment of contempt committed in the presence of the court in order that the appellate tribunal should have before it a reproduction of all the facts and circumstances as they were at the time of the alleged contempt in the presence of the court contemned, either by hearing witnesses in such appellate tribunal or by depositions, or in any other manner as the appellate tribunal may direct. But no good reason exists for the hearing of witnesses or the taking of depositions where the contumacious conduct takes place out of the presence of the court, for in such a case the alleged contemner is brought into court by attachment, interrogatories in writing are submitted to him, which interrogatories he is required to answer in writing, and thus both interrogatories and answers present the law and facts of the case.

By section 138 the legislature invested the Supreme Court with general jurisdiction to hear and determine appeals in contempt case, therefore, its judgment is final and not reviewable, even though it may have erred in the matter of procedure. It is to be particularly noted that the jurisdiction to hear and determine the appeal is not made dependent upon the method of procedure adopted by the Supreme Court.

In the present case the alleged contempt was committed out of the presence of the court, which fact appears on the face of the record. The Court of Quarter Sessions did not proceed by attachment and interrogatories, as it was legally required to do, and, therefore, when the appeal was regularly brought before the Supreme Court, under section 139, that court decided, after hearing counsel for appellant and counsel for the state, that the procedure adopted by the lower court against the alleged contemner was erroneous, and thereupon reversed the judgment. And the representative of state is now here, having sued out a writ of error from this court, on behalf of the state, to the Supreme Court, asking this tribunal to review the judgment of the Supreme Court.

But even if the position assumed by the majority court is sound in the assertion that the Supreme Court was in error in failing to rehear the appeal upon the law and upon the facts of the case, such error does not properly constitute a lack of jurisdiction to hear and determine the appeal, but presents rather a case of jurisdiction erroneously exercised, for which, if this had been a case subject to review, by this court, error was assignable and a writ of error would have been the proper remedy.

Moreover, the record on this appeal shows that the only question raised and argued in the Supreme Court was the legality of the procedure adopted by the Quarter Sessions against the alleged contemner. The representative of the state and counsel for Verdon were in accord that that was the only question in the case and it was in that aspect that the case was submitted by counsel in the case, to the Supreme Court for its decision. Verdon did not see fit to avail himself of the privilege accorded him by the statute and ask for a rehearing upon the law and upon the facts of the case. Neither did counsel for the state ask the court for a rehearing.

Apparently, counsel for the state and counsel for Verdon were content to waive the privilege of the statute accorded to the alleged contemner to a rehearing upon the law and upon the facts. The statute contemplates that the person ad-

judged in contempt is the one entitled to the privilege of a rehearing. As it is a provision made for his express benefit, there is no legal rule which precludes him from waiving it. At any rate he is not here complaining.

And even in the view that the provision of a rehearing might be availed of by the state, it is a sufficient answer to the complaint of the state made here, that it is not in a position to challenge the jurisdiction of the Supreme Court, because it did not demand a rehearing and acquiesced in the submission of the question of the legality of the procedure in the Quarter Sessions.

In *Dodd* v. *Una,* 40 *N. J. Eq.* 672, 713, Mr. Justice Magie said: "Where the subject-matter is within the court's jurisdiction the appearance and submission of parties may justify the assertion of the jurisdiction and prevent their afterward questioning it. *Tompkins* v. *Schomp,* 45 *N. J. L.* 488; *Funck* v. *Smith,* 46 *Id.* 484."

It is conceded in the present case that the subject-matter was within the jurisdiction of the Supreme Court.

At common law, and before the statute of 1884, the only proper means to review a *judgment,* in a criminal contempt, where want of jurisdiction in the court was alleged, was by *habeas corpus.* In *Dodd* v. *Una,* 40 *N. J. Eq.* (on *p.* 706), this court, by Mr. Justice Magie, said: "In proceedings for contempt the jurisdiction of the court to make the order alleged to have been disobeyed may be questioned on an application for attachment. *People* v. *Sturtevant,* 9. *N. Y.* 263. Or on a *habeas corpus.* *Ex parte Fisk,* 113 *U. S.* 713."

The attempt of this court upon a writ of error to the Supreme Court to review the law and facts dealt with by the Court of General Quarter Sessions is without precedent. Whence does this court derive that jurisdiction? Not from the common law nor by force of any statute.

The Croasdale case, reported in 88 *N. J. L.* 506, is no authority on the subject. The legality of the procedure removing that case from the Quarter Sessions to the Supreme Court, by *certiorari,* before judgment, and thence to this court by

writ of error, appears not to have been challenged in either court. It is sufficient to state that such a procedure is contrary to all well-recognized precedents firmly engrained in the law of this state.

If it were competent on this appeal for this court to pass upon the question as to the propriety of the ruling of the Supreme Court, and the propriety of the procedure in the Quarter Sessions, then I would have no hesitancy, in view of the unanimity of text-writers and well-considered cases on the subject, and the general consensus of opinion of the bench and bar, as manifested in a long line of decisions and continued practice, that the procedure pursued by the Quarter Sessions was erroneous. I am, therefore, in full accord with the views expressed by Mr. Justice Garrison in his opinion in the Supreme Court, wherein he sets forth a lucid, accurate and complete exposition of the law and practice relating to contempt cases in this state.

In the Cheeseman case (49 *N. J. L.* 115, 143) Mr. Justice Dixon does not unqualifiedly declare that the various steps against an alleged contemner are not jurisdictional. They may or may not be according to the circumstances of the case. It must be borne in mind that in the Cheeseman case the learned justice was dealing with the concrete facts of the case before the court, and his remarks must be understood and taken in that sense. He explains his remarks: "So that these various steps are manifestly not jurisdictional, *except* to the *extent* of laying before the court matters which constitute a contempt, and affording to the party accused a fair opportunity of denying or confessing their truth," by stating these facts: "In the present case, the appellant on the return of the rule to show cause filed his affidavit declaring the truth of all the matters alleged in the rule as the basis for its allowance, and although the consideration of the cause was then adjourned from term to term, yet the appellant never intimated that an affidavit should have been presented before the rule was granted, or that he was entitled to have an attachment issue or interrogatories filed, or that the rule should be

discharged for want thereof; and even after sentence was pronounced, he obtained leave to amend his affidavit, but did not *complain of any irregularity or illegality in the proceedings.* Under these circumstances, the objection now made cannot be sustained."

· And (on *p.* 142) the learned justice assigns as a reason for not setting aside the proceedings that the objection came too late.

It is, therefore, at once apparent that the Cheeseman case is no authority for the proposition that the steps to be taken in a procedure for contempt are not 'jurisdictional, but is rather as authority for the proposition that an alleged contemner may waive such proceedings, by appearing and not objecting.

In the present case, the important facts of which are clearly distinguishable from those in the Cheeseman case in many substantial respects, Verdon objected, from the very start of the initial proceedings against him, to their irregularity and illegality, but was overruled. I vote to dismiss the appeal.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, BERGEN, MINTURN, HEPPENHEIMER, WILLIAMS, GARDNER, JJ. 8.

*For dismissal*—KALISCH, J. 1.