[Criminal No. 687.  Filed November 21, 1928.]

[271 Pac. 872.]

BESSIE M. HAMPSTON, Appellant v. STATE, Respondent.

Mr. Alexander Murry and Mr. Frank E. Thomas, for Appellant.

Mr. John W. Murphy, Attorney General, Mr. Frank J. Duffy, Assistant Attorney General, and Mr. James T. Gentry, County Attorney, for the State.

ROSS, C. J.—The charging part of the information is in the following words:

"The said Bessie M. Hampston on or about the 7th day of June, 1927, and before the filing of this information, at the County of Cochise, State of Arizona, was then and there the clerk, agent, and servant of H. E. Wootton and H. E. Wootton, as guardian of the persons and estates of William H. Wootton, James E. Wootton, Daniel Wootton, and Harry E. Wootton, minors, and then and there by virtue of her said employment as such clerk, agent, and servant, there came into the possession, care, custody, and control of her, the said Bessie M. Hampston, one hundred dollars ($100.00) in lawful money of the United States of America, of the value of one hundred dollars ($100.00) in lawful money of the United States of America, the personal property of H. E. Wootton and H. E. Wootton, as guardian of the estates and persons of said William H. Wootton, James E. Wootton, Daniel

Wootton, and Harry E. Wootton, minors; and she, the said Bessie M. Hampston, after the said one hundred dollars ($100.00), in lawful money of the United States of America, had come into her possession, care and custody as aforesaid, did then and there, to wit: in the County of Cochise, State of Arizona, on or about the 7th day of June, 1927, willfully, unlawfully, fraudulently and feloniously convert, embezzle, and appropriate the same to her own use, not in the due and lawful execution of her said trust as such clerk, agent and servant, contrary to the form, force and effect of the statute in such cases made and provided, and against the peace and dignity of the State of Arizona.''

This information was demurred to on the grounds that it does not substantially conform to sections 934, 935 and 936, of the Penal Code of 1913, and on the ground that the facts stated therein do not constitute a public offense.

The only claimed defect in the information as pointed out in the appellant's assignments, briefs and oral argument, is that it fails to show the fiduciary relation of agent and principal at the time of the alleged embezzlement. The allegation of the existence of such relation ''on or about the 7th day of June, 1927,'' is positive and direct, as is also the allegation that on that date appellant came into the possession of $100 of the principal's money; and it is also quite as positively and directly alleged that ''on or about the 7th day of June, 1927,'' appellant embezzled said $100. We think it would be straining the imagination to an unwarranted degree to hold with appellant's contention that there is no allegation of the trust relation as of the time of the alleged embezzlement. That such relation existed at the time of the alleged embezzlement is as definitely and directly averred as that it existed at all.

Appellant relies upon *Thomas* v. *Territory,* 9 Ariz. 180, 80 Pac. 320, to sustain her contention, but in that

case the indictment failed to show a continuance of the trust relation from July 13, 1904, when the principal's property came into the agent's custody, to October 5, 1904, when it was averred he embezzled it. Because of the absence of an allegation of the trust relation on the last-named date, the indictment was held bad; but here the allegation of the trust and the conversion by the agent coincide in time. The information, as to form and substance, complies with sections 934, 935 and 936, *supra*, and sets out all the elements constituting the offense of embezzlement by a clerk, agent, or servant, as defined by section 505 of the Penal Code of 1913, under which it was drawn.

The verdict of the jury was:

"We, the jury duly impaneled and sworn in the above entitled action, upon our oaths do find the defendant guilty."

Upon this verdict appellant was sentenced to the state prison for a term of not less than four and not more than six years. It is now contended that it was error upon the part of the court to accept this verdict and to render judgment thereon for felonious embezzlement, because the law makes the punishment depend upon the value of the property embezzled, and that, no value being found, the court could not know whether to fix the punishment as for a felony or for a misdemeanor. It is contended in this connection that embezzlement, like larceny, is distinguished into two degrees for the purpose of punishment, and that therefore section 1090 of the Penal Code making it the imperative duty of the jury, when a crime is distinguished into degrees, to find the degree thereof of which the defendant is guilty, is controlling and should be observed by the jury.

The statute makes it the duty of the court, when "authorized to pass sentence, to determine and impose the punishment" (section 12, Penal Code), and

in embezzlement cases the punishment is the same as prescribed for larceny (section 511, Penal Code). In other words, in larceny when the property taken exceeds in value $50 it is designated grand larceny, and is punishable by imprisonment in the state prison for not less than one nor more than ten years (sections 484, 486, Penal Code), and in other cases, where the value of the property is $50 or less, it is designated as petit larceny, and is made punishable by fine or imprisonment in the county jail, or both (sections 485, 487, Penal Code). The same values determine the punishment for embezzlement. It would seem, therefore, to be indispensably necessary that the value of the property embezzled, as much so as in larceny cases, should be found by the verdict of the jury, before the court, whose duty it is to pass sentence, could determine and impose a proper and lawful punishment. In every information or indictment for embezzlement or larceny (with some exceptions) of the higher grade is included the lower grade, the distinguishing difference being the value of the property embezzled or stolen, and, under an information or indictment for the higher grade, a conviction may be had for the lower grade if the item of value reduces the offense from a felony to a misdemeanor. Pen. Code, § 1092.

While the value of the property in this case is fixed by the information at $100, unless the general verdict of "guilty" imports a finding by the jury that the value is that alleged or a value exceeding $50, the court had no basis upon which to sentence defendant to the state prison. The verdict is not that defendant is "guilty as charged," or "guilty in the manner and form charged in the information." It is simply that fendant is "guilty." This is a finding that defendant was guilty of embezzlement, but could the court determine therefrom whether it was intended to find him guilty of the higher or lower grade of the offense, or determine therefrom what sentence to

impose? Section 1084 provides that a verdict of "guilty" imports a conviction of the offense charged, but this is not true when the offense is distinguished into degrees, for in such case the jury "must find the degree of the crime of which defendant is guilty." § 1090, *supra.*

In *McLane* v. *Territory,* 8 Ariz. 150, 71 Pac. 938, the defendant was charged in the indictment with the crime of grand larceny; the value of the property being fixed at $60. The verdict was "guilty as charged in the indictment," and the court, after quoting pertinent sections of the Penal Code of 1901 (which have been carried forward into the revision of 1913), said:

"We think, under the statute, the jury must by their verdict find the degree of the crime, where the crime is divided into degrees, and that in the absence of such finding the judgment of the court based thereon is not warranted. The law contemplates that the jury shall decide upon the degree, and that they shall unequivocally so express themselves in their verdict. It is not sufficient to say that the indictment specifies the degree of crime, and that by reference to it the court can ascertain the degree which the jury found; nor can it be assumed, in spite of the clear instructions of the court on that point, that the jury did pass upon the value of the property taken, or take into consideration the language of the indictment. The intent and purpose of the act is to require the jury to pass upon the degree of the crime, and to register their action definitely in their verdict, and not leave it to be inferred, from reference to the indictment or any other proceeding in the case, what their action in that respect was, and in the absence of such finding in their verdict the verdict is fatally defective."

This case was followed and approved in *Buffehr* v. *Territory,* 11 Ariz. 165, 89 Pac. 415. It was approved but distinguished, because of a different state of facts, in *Maxwell* v. *Territory,* 10 Ariz. 1, 85 Pac. 116.

If the rule thus long established in this jurisdiction in larceny cases is applicable to verdicts in em-

bezzlement cases, then the verdict finding the defendant "guilty" was fatally defective. Larceny is not divided into grand and petit larceny because the elements in the one differ from the elements in the other. It requires the same intent, and the same acts to constitute petit as it does grand larceny. The difference is in the value of the property stolen. What is said of larceny may with equal propriety and correctness be said of embezzlement. The ingredients of a felony embezzlement and a misdemeanor embezzlement are the same, except in the matter of value of the thing embezzled. While the lawmakers have not distinguished embezzlement into degrees by direct expression, as they have in the case of larceny and many other crimes, they have for the purpose of punishment placed embezzlement in the same category as larceny, and it would seem that the rule announced in the McLane case, by every rule of logic and reason, should be applied to verdicts in embezzlement cases.

In *Holder* v. *State*, 31 Ariz. 357, 253 Pac. 629, we said:

"It is the general rule of law that we should look to the information to determine whether a verdict is sufficient."

This proposition, we think, is well supported by the cases. 36 C. J. 944, § 572.

We also think that ordinarily the court may not only look to the information or indictment in aid of the verdict, but to the trial and the particular issues involved (*Richey* v. *State,* 28 Wyo. 117, 201 Pac. 154, 159, 205 Pac. 304), and the instructions given thereon, but that such resort may not be had in crimes distinguished into degrees is settled so far as this jurisdiction is concerned, by the McLane and other cases cited.

It might be contended that, when all such aids are called into requisition, the meaning of the verdict in

this case is perfectly plain and unambiguous, and that therefore the jury found the number and value of dollars to be as alleged, or more than $50, and that the failure of the jury in their verdict to find thereon was a mere irregularity or technical error and not prejudicial to defendant's rights. But, can it be truthfully said that a disregard of a positive requirement of the statute, that the jury find the degree of the crime (when it is divided into degrees) of which defendant is guilty, is ever technical or nonprejudicial? We think not.

Even if we were disposed to overrule the previous decisions of this court and look to the evidence and instructions of the court in aid of the verdict, the evidence is not here as part of the record. Should we in its absence assume that it conclusively showed the number of dollars embezzled exceeded $50, and that defendant was guilty, if at all, of the higher degree of the crime? In doing so we would have to assume as a fact something the law directly and positively requires the jury to find in their verdict as a fact.

The instructions are a part of the record, but they do not aid the court in determining the meaning of the verdict. The court did not submit to the jury for their determination whether the amount embezzled was more than $50, or that amount, or less, or make any reference thereto in the instructions. They were not told that the amount of money alleged to have been embezzled was an issue, and that they should find the amount and its value for the purpose of aiding the court in determining and imposing punishment. In the absence of such instructions, we cannot assume the jury paid any attention to the amount or its value or even considered it.

We are of the opinion that the verdict was not in accordance with law, and that the judgment of conviction thereon was erroneous.

380

The judgment is reversed, and the cause remanded, with directions that the appellant be granted a new trial.

McALISTER, J., concurs.

LOCKWOOD, J. (Specially Concurring).—I concur in the result reached by the majority of the court solely on the ground of *stare decisis*. In my belief the dissenting opinion in the case of *McLane* v. *Territory, supra,* states the better rule of law. The majority opinion, however, has been the law of this state for 25 years, and I do not consider it lays down a rule which, even though highly technical, will produce any serious harm to the people of the state if we continue to follow it.