[Criminal No. 707.   Filed November 27, 1929.]

[282 Pac. 277.]

HARRY VAUGHN, Appellant, v. STATE, Respondent.

Messrs. Stockton & Perry and Mr. Stanley A. Jerman, for Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. Lloyd J. Andrews, Assistant Attorney General, and Mr. George T. Wilson, County Attorney, for the State.

LOCKWOOD, C. J.—Harry Vaughn, hereinafter called defendant, was informed against for a violation of Paragraph 710, Penal Code of 1913, which reads as follows:

"710.   Whoever compels, or in any manner seeks to compel or coerce any employee or any person, firm, company or corporation, to purchase goods or supplies from any particular person, firm, company or corporation shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine not less than five hundred dollars or be imprisoned in the county jail not more than six months."

The charging part of the information, so far as it is necessary for us to consider it, states "that on or about the 15th day of September, said Harry Vaughn, foreman, as aforesaid, for the said F. M. Benet and Company, a Corporation, as aforesaid, did then and there order said Joe Beukey to purchase said goods, supplies, lunches and milk from one Mrs. H. K. Wind. . . . " He was convicted by a jury and has appealed to this court.

There are three assignments of error, which we shall consider as seems advisable. The first two in effect raise the question of the sufficiency of the evidence to support the verdict. There is no material conflict in the testimony. It appears therefrom that F. M. Benet & Company, a corporation, was engaged in the construction of the Arizona Biltmore Hotel, some miles from the city of Phoenix. One Al Swedberg was in charge of the building as superintendent and had working under him several hundred men, with various subforemen, among the latter being defendant. Swedberg had given E. B. Fowler permission to operate a small lunch wagon on the premises owned by the hotel company for the purpose of supplying the employees with noon lunches and similar articles. The lunch wagon proved of insufficient capacity to accommodate all the workmen, and Swedberg requested Fowler to increase its capacity and to supply all of the men. The latter refused to do so unless he was given so-called "pay roll protection," which meant in effect, though not in form, that the corporation would guarantee payment of the men's accounts.

Some time later Swedberg informed Fowler that a Mrs. Wind was about to open a place where the men could get lunches and asked Fowler to move off the hotel ground, intimating it would be better all round for one person to supply lunches, rather than two or three. The latter the next day moved

his lunch wagon off the hotel premises, on property belonging to the Salt River Valley Water Users' Association, and sold lunches for a day or two, but then closed permanently from lack of patronage.

One Joe Beukey was employed by the corporation, working under the immediate supervision of defendant, and on September 15th, and after Fowler had moved off the hotel ground, purchased his noon lunch from the latter. Some hours later defendant asked Beukey if he had bought his lunch from Fowler, and on being answered in the affirmative, stated that his orders from his superiors were to discharge anyone purchasing from Fowler, and immediately discharged Beukey. Two other employees testified in substance that the same thing happened to them. Defendant testified that he informed Beukey that Mr. Swedberg had sent over a written order to discharge him and the others, and that he gave each one of them a time slip to present to the paymaster, showing what wages were due them, and that he had at no time attempted to induce or compel any of the men to buy from Mrs. Wind, or to cease to buy from Fowler, but had merely carried out his orders from Swedberg to discharge them.

The offense set forth in the statute is not that of coercing one to *refrain* from purchasing, but of compelling an *affirmative* purchase. The information recognizes this and charges that Beukey was ordered to purchase goods from Mrs. Wind by defendant. Beukey's own testimony is that when he was discharged he did not know that any orders had been given not to purchase from Fowler, or to purchase from Mrs. Wind, and there is not a scintilla of evidence in the record that either he or any one of the men whom it is claimed were discharged for purchasing from Fowler had ever heard of such orders until after their discharge. Nor was the discharge in the alternative form. It was not a threat of dis-

charge in case of a future act, but a present one for a past act. The evidence does not sustain the verdict. Had it shown that Beukey knew of the existence of an order, no matter what its form and whether directly or indirectly it matters not, the ultimate effect whereof was intended to compel employees to purchase lunches from Mrs. Wind under pain of discharge, and had Vaughn knowingly done some act in furtherance thereof which would have tended to coerce Beukey to purchase from Mrs. Wind when he would not otherwise have done so, the situation would have been very different, but there is not the slightest intimation of such a state of facts. It might perhaps be inferred from the evidence that Swedberg was attempting to coerce the employees of the corporation generally to purchase lunches from Mrs. Wind, by the indirect course of preventing their purchasing from Fowler, and that the discharge of Beukey by Swedberg's orders was intended to intimidate other employees, and that an information could be drawn covering such a situation so as to bring it within the statute, but we as an appellate court must deal with the record as it is, and not as it might have been. It is not necessary to discuss the other point raised.

The judgment of the superior court of Maricopa county is reversed and the case remanded for a new trial.

McALISTER and ROSS, JJ., concur.