113 P.3d 1247

**Richard OTTAWAY, Petitioner/Appellant,**

v.

**The Honorable Richard SMITH, Judge of the Phoenix Municipal Court, Respondent Judge,**

**The Phoenix City Prosecutor's Office, Real Party in Interest/Appellee.**

**No. 1 CA–CV 04–0815.**

Court of Appeals of Arizona, Division 1, Department A.

June 30, 2005.

OPINION

EHRLICH, Judge.

¶ 1 The Office of the Phoenix City Prosecutor charged Richard Ottaway with interfering with a judicial proceeding. *See* Ariz.Rev. Stat. ("A.R.S.") § 13–2810(A)(2) (2003). Ottaway asked that this charge be tried to a jury, a motion denied by the municipal court and special-action relief denied by the superior court. For reasons that follow, we affirm.

*BACKGROUND*

¶ 2 According to its complaint, the Phoenix City Prosecutor charges that Ottaway "knowingly disobeyed or resisted the lawful order, process or mandate of [the Phoenix Municipal Court]" in violation of A.R.S. § 13–2810(A)(2). Section 13–2810, entitled "Interference with Judicial Proceedings," proscribes six different forms of interference with judicial authority, including the one with which Ottaway was charged. *See* A.R.S. § 13–2810(A).[1] The statute classifies the commission of any of these forms of judicial interference as a class 1 misdemeanor. A.R.S. § 13–2810(B).

¶ 3 At common law, a defendant typically did not have the right to a jury trial for a "petty offense," and neither the United States nor the Arizona Constitution provide a right to a jury trial but, instead, simply preserve a defendant's common-law right to a trial by jury of "serious offenses." *See, e.g., Goldman v. Kautz,* 111 Ariz. 431, 432, 531 P.2d 1138, 1139 (1975) (citing *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)). Nonetheless, Ottaway asked the Phoenix Municipal Court to try this judicial-interference charge to a jury. The court denied this motion, and Ottaway sought special-action relief from the superior court. *See, e.g., State ex rel. McDougall v. Strohson (Cantrell),* 190 Ariz. 120, 121, 945

Neal W. Bassett, Otilia M. Diaz, and Ballacer & Segal By Natalee E. Segal, Phoenix, Attorneys for Petitioner/Appellant.

Office of the Phoenix City Prosecutor By B. Don Taylor, III, Assistant City Prosecutor, Phoenix, Attorneys for Real Party in Interest.

---

1. The other types of interference proscribed by this section are "[e]ngag[ing] in disorderly, disrespectful or insolent behavior during [a] session of a court that directly tends to interrupt its proceedings or impairs the respect due to its authority," "[r]efus[ing] to be sworn or affirmed as a witness in any court proceeding," "[p]ublish[ing] a false or grossly inaccurate report of a court proceeding," "[r]efus[ing] to serve as a juror unless exempted by law" and "[f]ail[ing] inexcusably to attend a trial at which he has been chosen to serve as a juror." A.R.S. § 13–2810(A)(1), (A)(3)-(6).

P.2d 1251, 1252 (1997) ("[T]he issue of entitlement to a jury trial is an issue properly brought via special action.") (citing *Spitz v. Phoenix Mun. Ct.*, 127 Ariz. 405, 406, 621 P.2d 911, 912 (1980)).

¶ 4 In reviewing Ottaway's special-action petition, the superior court concluded that the charge of "judicial interference" is "not an offense involving moral turpitude," that the penalties for the offense "are those of a class 1 misdemeanor" and that the charged offense presented "no grave or serious consequences flowing [from] a finding of guilt...." *See, e.g., Benitez v. Dunevant*, 198 Ariz. 90, 91–92 ¶¶ 4–5, 7 P.3d 99, 100–01 (2000) (citing *State ex rel. Dean v. Dolny*, 161 Ariz. 297, 778 P.2d 1193 (1989), and *Rothweiler v. Superior Court (City of Tucson)*, 100 Ariz. 37, 410 P.2d 479 (1966)). The court thus concluded that Ottaway was not entitled to have the judicial-interference charge tried by a jury and denied him relief. Ottaway then appealed to this court.

## ANALYSIS

■ ¶ 5 If the superior court accepts jurisdiction and determines the merits of a special-action petition, we review whether the court abused its discretion by its grant or denial of relief. *See, e.g., Files v. Bernal (State)*, 200 Ariz. 64, 65 ¶ 2, 22 P.3d 57, 58 (App.2001) (citing *Hamilton v. Mesa Mun. Ct.*, 163 Ariz. 374, 788 P.2d 107 (App.1989)). Because eligibility for a jury trial is a question of law, however, we independently determine the merits of Ottaway's request. *See Urs v. Maricopa County Attorney's Office*, 201 Ariz. 71, 72 ¶ 2, 31 P.3d 845, 846 (App. 2001).

¶ 6 To support his demand for a jury trial, Ottaway alleges disparate treatment due to the provisions of A.R.S. § 13–2810 compared with other legal provisions that apply to allegations of contempt of judicial authority. For example, he asserts that the conduct proscribed by § 13–2810(A)(2), "knowingly ... [d]isobey[ing] or resist[ing] the lawful order, process or other mandate of a court," also meets the definition of "criminal contempt" found in A.R.S. § 12–861 (2003),[2] and yet, unlike § 13–2810, § 12–863 permits a jury trial of such charges at the defendant's request. *See* A.R.S. § 12–863(A) (2003). Ottaway further contends that the definition of criminal contempt in the Arizona Rules of Criminal Procedure applies to his alleged conduct.[3] Like A.R.S. § 12–861, but, again, unlike Title 13, the Rules of Criminal Procedure require a jury trial of contempt charges in certain situations. *See* Ariz. R.Crim. P. 33.4(a). Because these provisions proscribe similar conduct but only § 13–2810 fails to provide for a jury trial under any circumstances, Ottaway insists that the denial of a jury trial of charges pursuant to § 13–2810(A)(2) is fundamentally unfair and violates principles of constitutional law. His reasoning is flawed, however, and, thus, we reject his constitutional arguments.

■ ¶ 7 First, Ottaway's claim that A.R.S. § 12–861 and § 13–2810 apply to the same conduct is patently incorrect. Although the conduct proscribed by § 13–2810(A)(2) and § 12–861 may appear similar, § 12–861 has an additional requirement not found in § 13–2810: In order for § 12–861 to apply, the allegedly contemptuous conduct not only must violate a court order, *see Pace v. Pace*, 128 Ariz. 455, 457, 626 P.2d 619, 621 (App. 1981), the conduct also must constitute a crime in itself. *See* A.R.S. § 12–861 ("the act or thing done [must] constitute[ ] a criminal offense ..."). Thus § 12–861 "is limited in scope to criminal contempts [that] are also crimes," *State v. Verdugo*, 124 Ariz. 91, 94, 602 P.2d 472, 475 (1979), and, if the contemptuous conduct constitutes a crime, the State proceeds against the defendant pursuant to § 12–861 *et seq. Vanguard Eng'g by Phelan v. Superior Court (Tharp)*, 166 Ariz. 405, 408

---

2. "A person who wilfully disobeys a lawful writ, process, order or judgment of a superior court by doing an act or thing therein or thereby forbidden, if the act or thing done also constitutes a criminal offense, shall be proceeded against for contempt...." A.R.S. § 12–861.

3. "Any person who wilfully disobeys a lawful writ, process, order, or judgment of a court by doing or not doing an act or thing forbidden or required, or who engages in any other wilfully contumacious conduct [that] obstructs the administration of justice ... [or] lessens the dignity and authority of the court, may be held in contempt of court." Ariz. R.Crim. P. 33.1.

n. 2, 803 P.2d 126, 129 n. 2 (App.1990); *see also State v. Cohen*, 15 Ariz.App. 436, 439–41, 489 P.2d 283, 286–88 (App.1971) (construing contempt proceeding as one pursuant § 12–861 because contemptuous action was allegation of criminal activity). *Cf. Riley v. Superior Court*, 124 Ariz. 498, 499, 605 P.2d 900, 901 (App.1979) ("If a contempt is criminal, but not within the bounds of [A.R.S. § 12–861], i.e., the contemptuous act is not a criminal offense by itself, the provisions of ... [the] Arizona Rules of Criminal Procedure ... are applicable.").

¶ 8 Second, although the language of A.R.S. § 13–2810 is much more consistent with that found in Arizona Rule of Criminal Procedure ("Rule") 33 than in A.R.S. § 12–861, Rule 33 provides little basis to argue for disparate treatment. Rule 33 only requires a jury trial if the defendant's potential punishment exceeds six months' incarceration or a fine in excess of $300 or both. Given that a violation of § 13–2810 is a class 1 misdemeanor, *see* A.R.S. § 13–2810(B), and that the maximum sentence of incarceration for such an offense is six months, *see* A.R.S. § 13–707(A)(1) (2001), the only case in which a defendant has a greater opportunity to a jury trial pursuant to Rule 33 than pursuant to § 13–2810 is when the potential fine exceeds $300.[4]

¶ 9 But, even if Rule 33 provides a greater right to a jury trial than does A.R.S. § 13–2810 for the same proscribed conduct, such an incongruity would not violate the Arizona Constitution. Assuming that Ottaway would have been entitled to a jury trial in a Rule 33 proceeding, his situation does not differ from a defendant whose class 6 felony is re-designated a class 1 misdemeanor. *See* A.R.S. § 13–702(G) (Supp.2003). In *State v. Quintana*, 195 Ariz. 325, 326 ¶¶ 2–3, 987 P.2d 811, 812 (App.1999), this court reviewed the propriety of the State's re-designation of trespass allegations, following a mistrial, from a felony to a misdemeanor, which thereby deprived the defendant of a new jury trial on the trespass allegations. This court upheld the re-designation as a proper exercise of the State's discretion, *id.* at 326 ¶ 7, 987 P.2d at 812, despite the fact that this action eliminated the defendant's right to a second jury trial on the allegations. *Id.* at 327 ¶¶ 9–10, 987 P.2d at 813 (citing A.R.S. § 13–702(G) (Supp. 1999)).

¶ 10 Ottaway's separation-of-powers argument is without merit, *see, e.g., State v. Larson*, 159 Ariz. 14, 17, 764 P.2d 749, 752 (App.1988) (rejecting separation-of-powers argument because of its failure to demonstrate how either "the legislature [ ]or the executive has ... begun exercising powers 'properly' belonging to either of the other branches of government"), and his reference to *Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), to support his claim that the right to jury trial is a "procedural" right is inapposite. As previously explained, the right to a jury trial for a particular charge existed substantively at common law. *Goldman*, 111 Ariz. at 432, 531 P.2d at 1139. Because of its substantive and common-law origins, the legislative and executive departments have powers that determine a defendant's right to a jury trial: "The legislature has the exclusive power to declare what the law shall be," which necessarily includes the power to "determine[ ] what is a crime and what punishment may be exacted for its breach," and "the executive branch has the power to decide what criminal charges to file." *State v. Prentiss*, 163 Ariz. 81, 85, 786 P.2d 932, 936 (1989). *See also State v. Donald*, 198 Ariz. 406, 416 ¶ 36, 10 P.3d 1193, 1203 (App.2000) (recognizing that "government necessarily entails some blending of powers and that 'absolute independence of the branches of government and

---

4. We find no relevance in Ottaway's contention that, given the likely surcharges that apply to even a modest fine, the fine imposed for a contemptuous action easily could exceed $300. "As a general rule, the penalties attendant to misdemeanor offenses in this state are, of themselves, not enough to secure a jury trial." *Benitez*, 198 Ariz. at 94, ¶ 13, 7 P.3d at 103; *see also* A.R.S. § 13–802(A) (2003) (maximum fine for misdemeanor is $2500). The ceiling in federal jurisprudence, which is based on the United States Congress' definition of a petty offense, is even greater. *See, e.g., United States v. LaValley*, 957 F.2d 1309, 1312 (6th Cir.) (holding that offense with potential exposure of six months' incarceration, fine of $5000 and five-year term of supervised release was "petty" within meaning of *Blanton v. City of North Las Vegas*, 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989)), *cert. denied*, 506 U.S. 972, 113 S.Ct. 460 (1992).

**494**

complete separation of powers is impracticable.' ") (quoting *J.W. Hancock Enter. Inc. v. Ariz. Registrar of Contractors,* 142 Ariz. 400, 405, 690 P.2d 119, 124 (App.1984)), *cert. denied,* 534 U.S. 825, 122 S.Ct. 63 (2001).[5]

¶ 11 Likewise, Ottaway's "vagueness" argument fails because he lacks standing to present such a challenge. His alleged conduct of "knowingly disobey[ing] the lawful order, process or mandate" of a court is neither outside the statute's clear scope, *see, e.g., State v. Trachtman,* 190 Ariz. 331, 334, 947 P.2d 905, 908 (App.1997); *State v. Kaiser,* 204 Ariz. 514, 517 ¶ 5, 65 P.3d 463, 466 (App.2003), *cert. denied,* 540 U.S. 1162, 124 S.Ct. 1174, 157 L.Ed.2d 1207 (2004), nor a type of expression protected by either the Arizona or the United States Constitution. *See State v. Brown,* 207 Ariz. 231, 237 ¶ 18, 85 P.3d 109, 115 (App.2004) (exception to standing for vagueness challenge possible if statute might cause others to refrain from constitutionally protected expression and statute's deterrent effect on legitimate expression is both "real" and "substantial").

¶ 12 Having rejected Ottaway's constitutional arguments, we consider whether a person charged pursuant to A.R.S. § 13–2810(A)(2) is entitled to a trial by jury. The superior court clearly relied on the authority found in *Rothweiler* and *Dolny. See, e.g., Rothweiler,* 100 Ariz. at 42, 410 P.2d at 483 (discussing "moral quality" as relevant factor to analysis of entitlement to jury trial); *Dolny,* 161 Ariz. at 300, 778 P.2d at 1196 (recognizing that misdemeanor offense with "grave" consequences might entitle defendant to trial by jury). However, after the court ruled, the Arizona Supreme Court issued its opinion in *Derendal v. Griffith (Phoenix City Prosecutor's Office),* 209 Ariz. 416, 104 P.3d 147 (2005). Because the supreme court abandoned the " 'moral quality prong' of *Rothweiler* " in *Derendal, id.* at 424

¶ 32, 104 P.3d at 155, we must evaluate the propriety of denying Ottaway a jury trial in light of the new analysis.

¶ 13 Pursuant to the *Derendal* analysis, determining whether a particular misdemeanor charge warrants a jury trial is a "two step process." *Id.* at 425 ¶ 36, 104 P.3d at 156. We begin by assessing whether "the statutory offense has a common law antecedent that guaranteed a right to trial by jury at the time of Arizona statehood." *Id.* We do so by considering whether any "common law offense and the offense charged" share "substantially similar elements." *Id.*

¶ 14 Although the elements of A.R.S. § 13–2810(A)(2) describe the common-law antecedent of contempt, this common-law offense did not carry a right to a jury trial. In *Ex parte Quan,* the Arizona Supreme Court reviewed the procedures that attached to a charge of "constructive contempt, that is, one committed without the presence of the court." 39 Ariz. 13, 15, 3 P.2d 522, 524 (1931). Following the predecessor to A.R.S. § 12–864 and other precedent, the court held that such a charge should "be punished in conformity to the practice and usage of the common law." *Id.* at 16, 3 P.2d at 524 (quoting Ariz. Rev. Code § 4474 (1928), predecessor to A.R.S. § 12–864, and citing *Ex parte Wright,* 36 Ariz. 8, 281 P. 944 (1929), and *Van Dyke v. Superior Court,* 24 Ariz. 508, 211 P. 576 (1922)). With regard to the common-law procedures attendant to such a contempt charge, the court cited authority from other jurisdictions to support its conclusion that "[t]he common-law mode of proceeding in cases of contempt presents no question of fact to be tried by a jury," *id.* at 18, 3 P.2d at 524 (quoting *Hudson County Quarter Sessions v. Verdon,* 90 N.J.L. 494, 102 A. 66, 68 (1917)), and noted that this proposition "was not, and cannot be, questioned." *Id.*[6]

---

**5.** The common law is not the only source for a potential right to a jury trial; however, the common-law right to a jury trial is the only right protected by the United States and Arizona Constitutions. The Arizona Legislature may, however, extend the right to a jury trial for certain offenses as a matter of grace. *See, e.g., Rothweiler,* 100 Ariz. at 44, 410 P.2d at 486 ("The right to a jury trial should be jealously guarded and preserved by the courts, whether granted by the

constitution or statutes."). Of course, also as a matter of grace, the Legislature can rescind that right without recourse for those later-affected litigants. *See, e.g., Hoyle v. Superior Court (State),* 161 Ariz. 224, 227, 778 P.2d 259, 262 (App.1989).

**6.** Ottaway's citation to § 162 of the Arizona Territory's 1901 Penal Code is inapposite. Although Ottaway cites this statute to support his claim

¶ 15 Given the lack of a common-law requirement for a jury trial of charges similar to A.R.S. § 13–2810(A)(2), we proceed to *Derendal's* "second step" and consider whether Article 2, Section 24 of the Arizona Constitution and the Sixth Amendment to the United States Constitution require a jury trial for judicial-interference charges due to the "seriousness of the offense." 209 Ariz. at 425 ¶ 37, 104 P.3d at 156. Because judicial-interference is a class 1 misdemeanor, *see* A.R.S. § 13–2810(B), punishable by no more than six months' incarceration, *see* A.R.S. § 13–707(A)(1), we must presume that violating § 13–2810(A)(2) "is not a jury-eligible offense." 209 Ariz. at 425 ¶ 40, 104 P.3d at 156. *See also id.* at 421 ¶ 16, 104 P.3d at 152 (citing *Blanton,* 489 U.S. at 543, 109 S.Ct. 1289 as the basis for that presumption). "To overcome [this] presumption," Ottaway "must demonstrate additional severe, direct, uniformly applied, statutory consequences of conviction for the offense." *Id.*

¶ 16 Although Ottaway concedes in his opening brief that he cannot suggest "any 'grave consequences' arising from the offense that would entitle him to a jury," this element of the *Derendal* analysis is concerned with only those consequences that would apply to all defendants based on the statute's language. *Id.* at 423 ¶ 25, 104 P.3d at 154.

Given that the plain language of A.R.S. § 13–2810(A)(2) does not suggest any "collateral consequences [that] 'approximate in severity the loss of liberty that a prison term entails,'" *id.* at 423 ¶ 24, 104 P.3d at 154 (quoting *Blanton,* 489 U.S. at 542, 109 S.Ct. 1289), we conclude that neither the Arizona nor the United States Constitution entitles a defendant facing a charge of judicial interference to a trial of that charge by a jury.

*CONCLUSION*

¶ 17 We affirm the municipal court's denial of Ottaway's request for a jury trial on the complaint against him and the superior court's denial of special-action relief. This matter is remanded to the municipal court for proceedings consistent with this opinion.

CONCURRING: DANIEL A. BARKER, Presiding Judge and MAURICE PORTLEY, Judge.

---

that "contempt was a crime during territorial days," this assertion does not satisfy the first test in *Derendal,* which focuses on the right to trial for the offense at common law. *See* 209 Ariz. at 425 ¶ 36, 104 P.3d at 156 ("Article 2, Section 23 requires that a court determine whether a statutory offense has a common law antecedent that guaranteed a right to trial by jury at the time of Arizona statehood."). In any event, the 1901 Penal Code defined contempt of court as a misdemeanor. Whether pre–1910 versions of the Arizona Penal Code provided a right to a jury trial for misdemeanors, *cf. Holder v. State,* 31 Ariz. 357, 361, 253 P. 629, 630 (1927) (citing provisions of Penal Code of 1913), and whether early Arizona courts simply made a practice of providing jury trials to defendants charged with misdemeanors, *see, e.g., Vaughn v. State,* 36 Ariz. 32, 282 P. 277 (1929); *Hampston v. State,* 34 Ariz. 372, 271 P. 872 (1928), is irrelevant to our

current jurisprudence on this subject. *See State ex rel. De Concini v. Tucson City Ct. (Smith),* 9 Ariz.App. 522, 523 & n. 3, 454 P.2d 192, 193 & n. 3 (1969) (citing *State v. Shearer,* 27 Ariz. 311, 232 P. 893 (1925), but following *O'Neill v. Mangum (State),* 103 Ariz. 484, 445 P.2d 843 (1968)). The only historical factor of current relevance is whether an analog to the offense existed at common law that afforded the defendant a right to trial. *See Hoyle,* 161 Ariz. at 229, 778 P.2d at 264 ("Even if there was a right to a jury trial in paternity actions under a territorial statute in effect in 1910, article II, section 23 would not have preserved that right."); *see also Donahue v. Babbitt,* 26 Ariz. 542, 549–50, 227 P. 995, 996–98 (1924) (rejecting as dicta proposition in *Brown v. Greer,* 16 Ariz. 215, 141 P. 841 (1914) that Arizona Constitution protects pre-statehood statutory right to jury trial in all law and equity cases).