[Civil No. 2405.   Filed March 1, 1926.]

[243 Pac. 916.]

# H. E. MOUNCE and A. V. MOUNCE, Appellants, v. ELIZA J. WIGHTMAN and ROLLA WIGHTMAN, Appellees.

1. JURY.—In all cases, both at law and in equity, a party is entitled to a jury as a matter of absolute right, under Constitution, article 2, section 23.

2. JURY.—Right to jury trial may be waived.

3. JURY—STATUTORY MODE OF WAIVER OF JURY HELD NOT EXCLUSIVE (CIV. CODE 1913, PAR. 508).—Civil Code of 1913, paragraph 508, as to waiver of right to jury trial by failure to demand jury, does not provide an exclusive method of waiver, and does not prohibit an implied waiver by other methods than by failure to demand jury, nor does it prohibit an express waiver.

4. APPEAL AND ERROR.—Minute entry that a jury was expressly waived is binding on appeal, preventing consideration of alleged error in denying jury trial.

5. APPEAL AND ERROR.—Where judgment was admissible against part of defendants, it is presumed court considered it only so far as it affected them.

6. ANIMALS—TITLE TO CATTLE NOT PROVED IN CIVIL CASES BY SHOWING THEY BEAR UNRECORDED BRAND (CIV. CODE 1913, PARS. 3758–3760, 3763, 3766).—Title to cattle is not shown in civil cases by mere fact that they bear unrecorded brand claimed by certain individual; this being considered only as a means of identification under Civil Code of 1913, paragraphs 3758–3760, 3763, 3766.

See (1) 35 C. J., p. 148, n. 6, 8, p. 153, n. 65, p. 161, n. 50. (2, 3) 35 C. J., p. 197, n. 48, p. 203, n. 17 New.   (4) 4 C. J., p. 512, n. 91; 31 Cyc., p. 729, n. 54.   (5) 4 C. J., p. 776, n. 51 New.   (6) 3 C. J., p. 41, n. 8 New; 32 C. J., p. 350, n. 76; 36 Cyc., p. 1111, n. 62, 68, p. 1147, n. 28; 40 Cyc., p. 2444, n. 53.

APPEAL from a judgment of the Superior Court of the County of Gila.   Fred C. Struckmeyer, Judge. Affirmed.

2.   See 16 R. C. L. 217.

6.   Brand as evidence of ownership of cattle, see notes in 12 Ann. Cas. 416; 11 L. R. A. (N. S.) 87. See, also, 1 R. C. L. 1082.

Mr. Jay Good and Messrs. McKenzie & Loose, for Appellants.

Mr. L. L. Henry and Mr. W. D. Moore, for Appellees.

LOCKWOOD, J.—Henry Mounce and E. E. Mounce, his wife, were the owners of the O Cross, Three Lazy S, and Triangle E brands, together with all cattle in such brands ranging in Gila and Graham counties, Arizona. The brand had been duly recorded according to law. At different times they executed three chattel mortgages on the said cattle and their increase. The first mortgage was in favor of the First National Bank of Globe for approximately $2,600; the second was in favor of one J. W. Rais for some $1,700; and the third for some $35,000 in favor of Eliza J. Wightman and Rolla Wightman, hereinafter called plaintiffs. The indebtedness covered by the second and third mortgages was also secured by mortgages on real estate in Gila and Graham counties.

February 9th, 1924, plaintiffs brought suit in the superior court of Graham county to recover the indebtedness secured by the third chattel mortgage, asking for foreclosure of it, and of the realty mortgage securing the same indebtedness, making the First National Bank of Globe, which held the note secured by the first chattel mortgage, a party defendant. A receiver was appointed to care for the cattle until they were sold by order of the court in such suit, and, after the cattle were bought in by plaintiff Eliza Wightman, he remained in charge of them as her employee.

After the sale of said cattle and their increase under the special execution in the Graham county case, Alfreda Mounce and Louis Mounce, respectively the minor daughter and son of Henry Mounce and

E. E. Mounce, claimed certain cattle branded Rafter O, part of which at least had been adjudged by the court in the Graham county suit to be of the increase of the mortgaged cattle, and which were also sold at the sheriff's sale. H. E. Mounce and A. V. Mounce, adult sons of Henry and E. E. Mounce, claimed a portion of the cattle sold under the O Cross and Triangle E brands, basing their claim on certain unrecorded marks and brands on such cattle, which had been placed on them in addition to the O Cross and Triangle E brands. The children, together with their parents, attempted to exercise the usual rights of ownership over the cattle claimed by them, and plaintiffs applied to the superior court of Gila county by this action for an injunction restraining the claimants from interfering with the cattle. The case was heard before the court without a jury, and the judgment awarded Alfreda and Louis Mounce thirty-five head of the Rafter O cattle, but determined that all the other cattle in controversy belonged to plaintiffs, and made the temporary injunction which had been issued at the commencement of the suit permanent. All four of the children appealed, but Alfreda and Louis Mounce dismissed their appeal, and the matter is now before us on the appeal of H. E. and A. V. Mounce, whom we will hereafter call the appellants.

There are some eighteen assignments of error which we will consider according to the legal propositions raised thereby. The first proposition of law is that the court erred in refusing to grant the defendants a trial by jury. It appears from the record that on the fifth day of June, 1924, defendants made a written demand for a jury trial. On the seventh day of June the court made the following minute entry:

"It appearing to the court that a jury was expressly waived, the trial of the case by jury is denied."

Whereupon the matter was set for hearing, and proceeded to trial before the court on the twenty-third day of June, 1924.

Article 2, section 23, of the Constitution, provides:

"The right of trial by jury shall remain inviolate, but provision may be made by law . . . for waiving of a jury in civil cases where the consent of the parties interested is given thereto."

Paragraph 508, Revised Statutes of Arizona of 1913 (Civil Code), reads in part as follows:

"A jury may be demanded by either party by a written demand filed with the clerk before the docket is called, or in open court at the time of the calling of the docket, and if not so demanded the right to a trial by jury shall be regarded as waived and the cause shall be tried by the court, unless the court shall otherwise order. . . . "

There is no doubt that in all cases, both at law and in equity, a party is entitled to a jury under our Constitution as a matter of absolute right. *Brown* v. *Greer*, 16 Ariz. 215, 141 Pac. 841.

This, however, is a right which may be waived by the parties. It is contended by appellant that paragraph 508, *supra*, provides the exclusive method of waiver, and that, since the record does not show the docket was called before the demand of June 5th, the right had not been waived. We do not think this contention is sound. The statute nowhere says that a jury may not be waived before the docket is called, but merely that, if it is not specifically demanded before that time it is deemed waived. We held in *Jenkins* v. *Skelton*, 21 Ariz. 663, 192 Pac. 249:

"The state Constitution, section 23, article 2, preserves the right of trial by jury, but provides that it may be waived by consent of the parties interested. It is silent as to how the waiver may be manifested. . . . It would seem that an implied consent to waive

a jury trial is quite as conclusive when clearly shown as an express consent.''

We think paragraph 508, *supra,* merely sets up one of the circumstances under which it shall be conclusively presumed that a trial by jury has been waived, but that it does not prohibit an implied waiver at other times and in other manners, and certainly not an express waiver.

The trial court found as a matter of fact, and so stated in the minutes, that a trial by jury had been waived. We cannot go back of that minute entry, and therefore hold that upon the record as it appears in this case defendants were not entitled to a jury trial.

We next consider those assignments of error which raise the point there was nothing in either the complaint or the evidence showing that appellants had ever committed any act which would justify the issuance of an injunction. Were this before us on an appeal from the order issuing the temporary injunction on the complaint and affidavits supporting it, there would be some doubt as to whether the allegations of the complaint were sufficient to justify the issuance of an injunction against these appellants. The appeal, however, is taken from the judgment granting the permanent injunction rendered after appellants had answered fully and set up their claim of ownership to part of the cattle in controversy, and after a full hearing on the merits. The entire pleadings, taken with the evidence, are such that, if the judgment of the trial court as to the ownership of the cattle is correct, the permanent injunction was proper against these appellants as well as the other defendants.

The eighth assignment of error is that the court admitted the certified copy of a certain judgment in Graham county in evidence. It was certainly admis-

sible as against those of the defendants herein who
were parties thereto, and it is presumed the court
considered it only so far as it affected them. There
is nothing in the abstract of record to show it was
used in any other manner.

The ninth and eleventh assignments of error raise
practically the same question of law. It is that the
court erred in holding no assumption of ownership
could arise because cattle were branded with an un-
recorded brand. There are two lines of decisions on
this point. One is well represented by the case of
*Hurst* v. *Territory,* 16 Okl. 600, 86 Pac. 280.

Therein the court says:

"It is a matter of common knowledge that in many
instances, and particularly with persons owning large·
herds of cattle, the only method of identification and
the only proof of ownership that can be produced or
obtained is the brand or marks, and if it should be
held, as contended for by plaintiff in error, that this
statute makes evidence of ownership by brand incom-
petent, except where the brand is recorded, then in
such cases it would be absolutely impossible to prove
ownership."

See, also, *State* v. *Cardelli,* 19 Nev. 319, 10 Pac. 433.

The other line is found in Texas, where it is held:

"Where the prosecution relies entirely upon the
brand upon the stolen animal as evidence of owner-
ship against the accused, then the state must show
a recorded brand [citing cases]. But this is the rule
only where the brand is solely relied upon as evidence
of ownership, . . . 'for an unrecorded brand is ad-
missible to aid in proving the identity of a stolen
animal, the title being established by other testi-
mony.'" *Hutto* v. *State,* 7 Tex. App. 44.

It is true the Texas decisions are based on an ex-
press statute barring the use of unrecorded brands
to prove ownership, and our Code does not contain
a positive inhibition of that nature. But, when we
examine the various sections of our statutes dealing

with livestock and brands, we think the intention of our legislature was plain. We quote from some of these paragraphs (Civil Code 1913):

"3758. The brand or earmark of the owner thereof who has complied with the provisions of this chapter, borne by a range animal, shall in all courts in this state be taken as *prima facie* evidence that the animal bearing the same is the property of the owner of such brand and mark. . . .

"3759. The ownership of animals may be established by the testimony of any person or persons who may know the animal and its owner, independent of any mark or brand.

"3760. In the trial of any person charged with the violation of any of the stock laws of this state the prosecution shall have the right to prove, as tending to show conversion by the accused, that the animal or animals in question were branded into a brand or were marked into a mark claimed by the accused to be his brand or mark, although such brand or mark are neither of them recorded, and in all cases where any live stock . . . are alleged to have been stolen . . . which live stock . . . have either strayed or have been driven from a foreign country or state into this state, the ownership thereof may be shown by the marks or brands thereupon, although such marks or brands shall not have been recorded. . . .

"3763. Whenever any live stock branded with any brand not duly recorded . . . shall be found at large . . . the same shall be reported . . . and shall be considered as unclaimed live stock. . . .

"3766. Every person who shall mark or brand any unmarked or unbranded . . . cattle found running at large upon any range in this state, with a mark or brand that has not been recorded . . . shall be deemed guilty of larceny of said animal."

Taking these various statutes into consideration, it is evident to us that the legislature intended so far as possible to abolish the use of unrecorded marks or brands within the state of Arizona. If it had believed the general rule allowed the use of unrecorded brands

to prove ownership, it would have been unnecessary to make the special exceptions found in paragraph 3760, *supra.* If it had intended to allow the proof of title by an unrecorded brand, it would hardly have provided any animals so marked should be considered as unclaimed livestock, or that it should be a felony to put an unrecorded brand on unbranded range cattle. The whole theory and purpose of our law in regard to brands and their record evidently is that a brand is available for the purpose of proving title only when it is recorded, excepting certain cases of criminal prosecutions for larceny. This does not mean that a recorded brand is conclusive evidence of ownership, as the title to property may be proved in many different ways. It does mean, however, in our opinion, that an unrecorded brand is to be considered only as a method of identification, just as a birthmark, a deformity, or the general appearance of an animal may show its identity, and that ownership or title cannot, under our law, be shown in a civil case by the mere fact that a certain unrecorded brand is claimed by a certain individual and that it is on the stock whose ownership is in question.

The wisdom of such a construction is shown by the facts in this case. A large portion of the marked cattle bore the brand O Cross. It is the contention of appellants that they had the right to adopt a brand which was the O Cross with a simple addition thereto, and that the mere proof of the presence of this new and unrecorded brand on cattle was evidence that they were the owners thereof. We do not for one moment wish to be understood as intimating that in this particular case appellants did surreptitiously rebrand any of the legitimate O Cross cattle by adding. to that brand a Circle or Slash with intent to defraud plaintiff. But it is obvious that, if the law were what appellants claim it is, the brand laws would be com-

pletely emasculated as a protection against larceny. All general laws at times work hardships in individual cases, and this may be such an instance, but the general rule must be upheld, lest a greater evil result.

The tenth assignment of error in regard to striking the answer of the witness Henry Mounce is without merit. The answer stricken was not responsive to the question. If it had been material, and defendant desired it admitted, he should have brought it out in the proper manner.

The other assignments of error deal with the sufficiency of the evidence to support the conclusions of the court. We have read the testimony carefully, and are satisfied that on the law as we have declared it the trial court was fully justified in its conclusions.

There being no error in the record, the judgment of the trial court is affirmed.

McALISTER, C. J., and ROSS, J., concur.