778 P.2d 259

Kenneth R. HOYLE, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Edward C. Voss, the Honorable Rufus C. Coulter, the Honorable Irwin Cantor, judges thereof, Respondent Judges,

STATE of Arizona and Kimberly J. Wright, Real Parties in Interest.

No. 1 CA-SA 88-230.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 1, 1989.

As Corrected Aug. 22, 1989.

Skeens & Anderson by Steven L. Parker, Phoenix, for petitioner.

Robert K. Corbin, Atty. Gen. by Rick E. Olson, Asst. Atty. Gen., Phoenix, for respondents/real parties in interest.

## OPINION

KLEINSCHMIDT, Judge.

This is a special action review of the trial court's denial of a request for a jury trial in a paternity action pursuant to A.R.S. section 12–846(F) (Supp.1988), which requires that paternity actions be tried to the court. We consider the following issues:

(1) whether there was a statutory or common law right to a jury trial in paternity actions when section 12–846(F) was enacted;

(2) whether section 12–846(F) is unconstitutional in light of the Arizona Constitution's article II, section 23 mandate that the right to a jury trial remain inviolate; and

(3) whether section 12–846(F) is unconstitutional because its purpose was not set forth in the title of the bill in which it was enacted as article IV, part 2, section 13 of the Arizona Constitution requires.

We find that there was no statutory or common law right to a jury trial in paternity actions when section 12–846(F) was enacted and that section 12–846(F) does not violate the constitutional provisions in question. We previously issued an order denying the petitioner the relief that he requested. We now discuss our reasons for doing so.

## PROCEDURAL HISTORY

On October 9, 1987, the state filed a paternity action against the petitioner. On January 12, 1988, the petitioner requested a jury trial. When the state later moved that the case be set for trial to the court, the petitioner again requested a jury trial. The state opposed the petitioner's request. After receiving memoranda and hearing oral argument on the issue, the trial court denied the petitioner's request. This special action followed.

## JURISDICTION

■ Because an order denying a request for a jury trial is not an appealable order, *see* A.R.S. § 12–2101 (Supp.1988), a petition for special action is an appropriate method of seeking review. *See Tanner Cos. v. Superior Court,* 123 Ariz. 599, 599–600, 601 P.2d 599, 599–600 (1979). We accepted special action jurisdiction because the constitutionality of section 12–846(F) is an issue of first impression and of statewide importance. *See Bartlett v. Superior Court,* 150 Ariz. 178, 180, 722 P.2d 346, 348 (App.1986).

## STATUTORY RIGHT TO A JURY TRIAL

■ The petitioner contends that section 12–846(F) abrogated the statutory right to a jury trial in paternity actions. We disagree with this characterization of section 12–846(F)'s effect. We find that it could not have abrogated the statutory right to a jury trial in paternity actions because no such right existed when it was enacted. We base this conclusion upon an analysis of the statutory history of paternity actions.

Paternity statutes first appeared in the 1913 Penal Code. *See* Ariz. Penal Code §§ 369–81 (1913). These statutes did not specifically give the defendant in a paternity action the right to a jury trial. *See id.* However, a general provision of the Penal Code extended every criminal defendant this right. Ariz. Penal Code § 753(1) (1913).

Article IV, part 2, section 13 of the Arizona Constitution requires that each legislative act deal with a single subject and express that subject in its title. In 1922, the Arizona Supreme Court found that the legislature violated this provision by including paternity statutes in the Penal Code because paternity actions were civil rather than criminal in nature. *Skaggs v. State,* 24 Ariz. 191, 201–02, 207 P. 877, 880 (1922). The court accordingly struck down the paternity statutes as unconstitutional. *Id.* at 202, 207 P. at 880.

The following year, the legislature enacted almost identical statutes as part of the Civil Code. *See* Laws 1923, ch. 72, §§ 1–15. At that time, the Code provided that either party in a civil action had the right to submit all issues of fact to a jury. Ariz. Civ.Code ¶ 508 (1913). This provision was subsequently deleted from the 1928 Revised Code. *See* Ariz.Rev.Code § 3802 (1928). It was replaced by the following provision: "A jury may be demanded by either party in writing, filed with the court before the action is set, or may be demanded orally in open court at the time of the setting." *Id.* This provision differed from its predecessor in that it was purely procedural in nature and did not grant a substantive right to a jury trial.

The 1928 provision was in turn superseded by Rule 38(b) of the Rules of Civil Procedure when Arizona adopted its counterpart to the Federal Rules in 1939. *See* Ariz.Code § 21–908 (1939) (currently at Rule 38(b), Arizona Rules of Civil Procedure, 16 A.R.S.). Rule 38(b) is also purely procedural. In pertinent part, it provides that a party "may demand a trial by jury of any issue triable of right by a jury."

Since there was no general statutory grant of the right to a jury trial in civil actions after 1928, we examine the paternity statutes themselves to ascertain whether they provided such a right. These statutes remained essentially the same from the time that they were originally enacted in 1923 until they were repealed in 1971. *See* A.R.S. former §§ 12–841 to 12–851 (repealed by Laws 1971, ch. 163, § 1); Laws 1953, ch. 67, § 1; Ariz.Code §§ 27–405 to 415 (1939); Ariz.Rev.Code §§ 275–85 (1928); Laws 1923, ch. 72, §§ 1–15. They required that a justice of the peace conduct a preliminary examination of the defendant and other witnesses to determine whether there was probable cause to believe that the defendant was the father of the child in question. *See State v. Hicks,* 69 Ariz. 208, 212, 211 P.2d 473, 476 (1949). If the examination revealed that probable cause existed, and the defendant did not reach a support agreement with the child's mother, the justice of the peace was required to bind

the defendant over to the superior court for trial on the paternity issue. *Id.*

As we have noted, the statutes did not specifically give the defendant in a paternity action the right to a jury trial. *See* A.R.S. former §§ 12–841 to 851 (repealed by Laws 1971, ch. 163, § 1). However, they did include a provision that gave the defendant the right to present certain evidence to the jury. *See* A.R.S. former § 12–845(D) (repealed by Laws 1971, ch. 163, § 1). This provision was the only reference to a jury in the statutory scheme. It read as follows: "The examination taken before the justice of the peace shall in all cases be read to the jury when demanded by the defendant." *Id.*

What a statute necessarily implies is as much a part of the statute as what the statute specifically expresses. *Maricopa County v. Douglas,* 69 Ariz. 35, 39, 208 P.2d 646, 648 (1949); *Preferred Risk Mut. Ins. Co. v. Tank,* 146 Ariz. 33, 35, 703 P.2d 580, 582 (App.1985). We believe that in giving the defendant in a paternity action the right to present certain evidence to the jury, the legislature, by necessary implication, also gave the defendant the right to a jury trial.

This right was law until 1971. *See* A.R.S. former § 12–845(D) (repealed by Laws 1971, ch. 163, § 1). In 1971, the paternity statutes were repealed. Laws 1971, ch. 163, § 1. The legislature replaced them with a new statutory scheme that eliminated the examination by the justice of the peace and gave the superior court jurisdiction of the entire paternity proceeding. *See* A.R.S. §§ 12–841 to 851. There was no reference to a jury or a jury trial in the new scheme. *See id.* The legislature did not add such a reference in subsequent amendments. *See* A.R.S. §§ 12–841 to 851 (1982 & Supp.1988). In 1988, the legislature enacted section 12–846(F), which requires that paternity actions be tried to the court.

Since none of the statutes enacted after 1970 conferred the right to a jury trial in paternity actions, we conclude that section 12–846(F) did not abrogate this right. By requiring that paternity actions be tried to the court, it merely made explicit what had been implicit in the statutory scheme since 1971.

## COMMON LAW RIGHT TO A JURY TRIAL AND THE ARTICLE II, SECTION 23 MANDATE

Article II, section 23 of the Arizona Constitution provides in pertinent part that "[t]he right to trial by jury shall remain inviolate." This provision preserves the right to a jury trial in those actions in which the right existed at common law when the Arizona Constitution was adopted in 1910. *Rothweiler v. Superior Court,* 100 Ariz. 37, 41, 410 P.2d 479, 482 (1966). In response to the petitioner's contention that there was a right to a jury trial in common law paternity actions, the state asserts that paternity actions did not exist at common law.

The term "common law" has several meanings. *See* Black's Law Dictionary 250–51 (5th ed. 1979). In one sense, it refers to the ancient, nonstatutory law of England as applied and developed in the English courts. *Id.* As defined in this manner, the common law regarded an illegitimate child as *filius nullius*—the child of no one. *McGlohon v. Harlan,* 254 S.C. 207, 211, 174 S.E.2d 753, 755 (1970). On the basis of this fiction, it "closed its eyes to the fact of ... [the illegitimate child's kinship with its parents] and in legal aspect ignored its existence. It absolved the mother equally with the father from liability for the support of the child...." *Doughty v. Engler,* 112 Kan. 583, 583–84, 211 P. 619, 619 (1923).

Historically, the purpose of a paternity action was to prove that the defendant was the child's father so that he could be required to contribute to the child's support. *E.R.B. v. J.H.F.,* 496 A.2d 607, 611 (D.C. 1985). Paternity actions did not exist under England's nonstatutory common law because the common law did not impose a duty of support upon the father of an illegitimate child. *See County of El Dorado v. Schneider,* 191 Cal.App.3d 1263, 1278, 237 Cal.Rptr. 51, 61 (1987); *Allen v. Hun-*

*nicutt,* 230 N.C. 49, 50, 52 S.E.2d 18, 19 (1949). However, this fact does not end our inquiry.

The term "common law" may encompass more than the ancient, nonstatutory law of England as applied and developed by the English courts. It may also include English statutes amending this law. Black's Law Dictionary 251. In 1864, while Arizona was still a territory, it enacted a statute adopting the common law as the rule of decision in its courts. *John W. Masury & Son v. Bisbee Lumber Co.,* 49 Ariz. 443, 458, 460–61, 68 P.2d 679, 686, 687 (1937). This statute, which now appears at A.R.S. section 1–201, has been carried forward in each successive code. *See id.* at 461, 68 P.2d at 687. Its essential content has remained unchanged since 1887. *See id.;* A.R.S. § 1–201.

In the context of this statute, the term "common law" includes certain English statutes. The Arizona Supreme Court has described these statutes as follows:

> [T]he acts of parliament of a general nature, and not local to Great Britain, which had been passed and were enforced at the time of our separation from the mother country so far, of course, as they are suitable to our wants, conditions, and circumstances.

*Bisbee Lumber Co.,* 49 Ariz. at 463, 68 P.2d at 688.

While England's nonstatutory common law did not create an action to determine paternity and compel support, an early English statute, 18 Elizabeth, chapter 3 (1576), did create such an action. *See Cahill v. State,* 411 A.2d 317, 320–21 (Del.Super.Ct.1980), (setting forth text of 18 Elizabeth, chapter 3), *rev'd* 443 A.2d 497 (Del. 1982). An amended version of this statute, 6 George 2, chapter 31 (1733), was in effect in 1776. *See* II G. Nicholls, *A History of the English Poor Law* 22, 138, 222–23 (rev'ed 1864, reprint 1967); *Report of the Poor Law Commissioners* 166 (1834).

As we have noted, article II, section 23 preserves the right to a jury trial in actions in which the right existed at common law when the Arizona Constitution was adopted in 1910. *Rothweiler,* 100 Ariz. at 41, 410

P.2d at 482. Since Arizona's 1910 common law included certain English statutes that had been effective in 1776, the question arises whether article II, section 23 preserves the right to a jury trial in actions in which these English statutes created the right. We need not resolve this question in the present case because we find that 18 Elizabeth, chapter 3, as amended, did not create the right to a jury trial in paternity actions in 1776.

Eighteen Elizabeth, chapter 3 was one of the Elizabethan Poor Laws. *Commissioner of Welfare v. Jones,* 73 Misc.2d 1014, 1016, 343 N.Y.S.2d 661, 665 (1973). These laws required English parishes to support the paupers who could claim a legal settlement within their boundaries. *See Mahoney v. Maricopa County,* 49 Ariz. 479, 482, 68 P.2d 694, 696 (1937); D. Marshall, *The English Poor in the Eighteenth Century* 2–3 (1926, reprint 1969); S. & B. Webb, *English Local Government: The Parish and the County* 14 (1906, reprint 1963). The parish officials who implemented the Poor Laws were supervised by the justices of the peace, who were authorized to issue a wide range of orders governing various facets of Poor Law administration. N. Landau, *The Justices of the Peace, 1679–1760* 6–7 (1984); S. & B. Webb, *supra,* at 298–301, 418, 589.

The justices of the peace of the entire county sat as a court at the General Sessions of the Peace. S. & B. Webb, *supra,* at 296. The justices were required to hold these sessions at least four times a year. *Id.* The four required meetings became known as Quarter Sessions. *Id.* at 296. Additional General Sessions were held as the need arose. *See id.* at 297.

The justices also acted "out of Sessions" pursuant to statutes that gave a single justice or two justices sitting together the authority to resolve certain matters. *See id.* at 298–99, 298 n. 1, 418. In resolving the matters that they heard "out of Sessions," the justices acted without a jury. *Id.* at 298–99, 298 n. 1, 419.

Eighteen Elizabeth, chapter 3 authorized two justices, "upon examination of the cause and circumstance" of parentage, to

order the parent or putative parent of an illegitimate child whose support was likely to become a parish expense to make "payment of money weekly or other sustenation for the relief of such child." *See Cahill*, 411 A.2d at 321. Since Arizona's common law included English statutes that were in effect in 1776, we focus on the amended version of 18 Elizabeth, chapter 3 which was in effect at that time to determine whether it provided the right to a jury trial.

This statute, 6 George 2, chapter 31, authorized the parish officials who implemented the Poor Laws to apply to one or more justices for the type of support order that 18 Elizabeth, chapter 3 had created. *Report, supra*, at 166. These applications were administrative in nature. *See* S. & B. Webb, *supra*, at 418. Like other proceedings conducted "out of Sessions," they took place without a jury. *Id.* at 298 n. 1, 419. Defendants who disagreed with the resulting order could appeal to the Quarter or General Sessions. *See id.* at 419–20, 437– 38. Although juries determined some issues presented to these sessions, appeals from support and other orders issued by the justices acting "out of Sessions" were decided by the session justices alone. S. & B. Webb, *supra*, at 437–38, 481. Since neither the statutory nor the nonstatutory common law provided for a jury in paternity actions, we conclude that article II, section 23 does not entitle the petitioner to a jury trial.

The petitioner also argues that he is entitled to a jury trial because there has been a right to a jury trial in paternity actions since Arizona became a state. For the reasons we discussed at the outset, this is incorrect. If the defendant means that he is entitled to a jury trial because that right existed in paternity cases *when* Arizona became a state, he is also incorrect. The Arizona Constitution was adopted in 1910. Arizona's earliest paternity statutes were enacted in 1913. *See* Ariz.Penal Code §§ 369–81 (1913). Even if there was a right to a jury trial in paternity actions under a territorial statute in effect in 1910, article II, section 23 would not have preserved that right. *State v. Roscoe*, 145 Ariz. 212, 226, 700 P.2d 1312, 1326 (1984);

*Donahue v. Babbitt*, 26 Ariz. 542, 547, 227 P. 995, 996–97 (1924).

Finally, the petitioner cites *Shaffer v. Insurance Co. of North America*, 113 Ariz. 21, 545 P.2d 945 (1976) and *Mounce v. Wightman*, 30 Ariz. 45, 243 P. 916 (1926) for the proposition that every party to any litigation in the superior court is entitled to a jury trial as a matter of absolute right. The 1913 Civil Code provided that either party in a civil action had the right to submit all issues of fact to a jury. Ariz. Civil Code ¶ 508 (1913). In *Brown v. Greer*, 16 Ariz. 215, 218, 141 P. 841, 842 (1914), the court relied upon an earlier, identical version of this provision in holding that the right to a jury trial was absolute. Both *Mounce* and *Shaffer* ultimately rely upon *Brown*. *Mounce* cites *Brown* directly. 30 Ariz. at 48, 243 P. at 917. *Shaffer* cites *Stukey v. Stephens*, 37 Ariz. 514, 295 P. 973 (1931), which in turn cites *Brown*. *Shaffer*, 113 Ariz. at 22, 545 P.2d at 946; *Stukey*, 37 Ariz. at 516, 295 P. at 973.

As we have previously explained, the provision that *Brown* relied upon was deleted from the 1928 Revised Code and was replaced by a provision that did not grant a substantive right to a jury trial in civil actions. *See* Ariz.Rev.Code § 3802 (1928). The new provision was in turn replaced by Rule 38(b), Arizona Rules of Civil Procedure, which provides that a party may demand a trial by jury "of any issue triable of right by jury." *See* Ariz.Code § 21–908 (1939). As we have also previously explained, a party to a civil action is entitled to a jury trial as a matter of absolute right only in those actions in which article II, section 23 preserves the right that existed at common law when the Arizona Constitution was adopted in 1910. *Rothweiler*, 100 Ariz. at 41, 410 P.2d at 482. This is not such an action.

## TITLE OF ENACTING LEGISLATION

The petitioner next challenges section 12–846(F) on the basis of article IV, part 2, section 13 of the Arizona Constitution, which provides as follows:

Every Act shall embrace but one subject and matters properly connected therewith, which shall be expressed in the title; but if any subject shall be embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be embraced in the title.

The petitioner contends that this provision renders section 12–846(F) void because its purpose was not set forth in the title of the bill in which it was enacted.

■ The purpose of article IV, part 2, section 13 is to insure that the legislature and the general public receive fair notice of the contents of legislative acts. *Dennis v. Jordan*, 71 Ariz. 430, 439, 229 P.2d 692, 697–98 (1951). As a general rule, an act's title need not be a synopsis or a complete index of the act's provisions. *Id.* It is sufficient if it informs the reader of the subject matter of the legislation and of the interests that the legislation may affect in a general way. *Id.*

■ The titles of amendatory acts are governed by a different rule. When an amendatory act only contains provisions that are germane to the subject of the legislation being amended, its title is sufficient if it identifies the legislation being amended by chapter and section number alone. *Hancock v. State*, 31 Ariz. 389, 401, 254 P. 225, 229 (1927). However, "[w]hen the title particularizes some of the changes to be made by the amendment, the legislation is limited to the matters specified and anything beyond them is void, however germane it may be to the subject of the original act." *State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 593, 667 P.2d 1304, 1308 (1983). *See also State v. Sutton*, 115 Ariz. 417, 420, 565 P.2d 1278, 1281 (1977).

The bill in which section 12–846(F) was enacted bore the following title:

RELATING TO COURTS AND CIVIL PROCEEDINGS; PRESCRIBING COMPLAINT PROCEDURES IN MATERNITY MATTERS; MAKING CONFORMING CHANGES; PRESCRIBING FAMILY SUPPORT ENFORCEMENT; PRESCRIBING CERTAIN TESTS TO ESTABLISH PATERNITY; PROVIDING FOR ALTERNATIVE OR ADDITIONAL TESTS TO ESTABLISH PATERNITY UPON COURT ORDER; PRESCRIBING PRESUMPTION OF COURT IN CHILD SUPPORT MATTERS; PRESCRIBING PRIORITY OF JUDGMENTS IN CIVIL ACTIONS; PRESCRIBING ENFORCEMENT OF A FOREIGN SUPPORT ORDER; REQUIRING THE DEPARTMENT OF ECONOMIC SECURITY TO DEDUCT AND WITHHOLD FROM UNEMPLOYMENT COMPENSATION CERTAIN AMOUNTS PAYABLE TO AN INDIVIDUAL LIABLE FOR CHILD SUPPORT OBLIGATIONS; REQUIRING CHILD SUPPORT TO CONTINUE PAST AGE OF MAJORITY IN CERTAIN CIRCUMSTANCES; PRESCRIBING NOTIFICATION DUTIES OF THE PARENT RESPONSIBLE FOR PROVIDING MEDICAL INSURANCE AND THE CLERK OF THE COURT UPON CERTAIN CONDITIONS; PROVIDING FOR THE USE OF MONIES APPROPRIATED TO THE DEPARTMENT OF ECONOMIC SECURITY FOR TITLE IV–D ENFORCEMENT PROGRAMS; PRESCRIBING SUBMISSION OF QUARTERLY REPORTS, AND AMENDING SECTIONS 12–846, 12–847, 12–1689, 12–2456, 12–2458, 12–2461, 23–789, 25–320, 25–337.01 AND 46–406, ARIZONA REVISED STATUTES.

Laws 1988, ch. 314.

■ The title particularized some of the changes that the amendment would make. It did not mention that section 12–846(F) would require that paternity actions be tried to the court. We believe that a title's failure to identify the purpose of one of the sections of an amendatory act would normally render the title inadequate. *See American Estate Life Ins. Co. v. Arizona Dep't of Ins.*, 116 Ariz. 240, 243, 568 P.2d 1138, 1141 (App.1977) (title's failure to give notice that amendatory act imposed new tax rendered tax provision void); *Sutton*, 115 Ariz. at 419–20, 565 P.2d at 1280–81 (title expressing amendatory act's purpose as "prescribing penalty for theft of credit card" did not give adequate notice of act's

additional purpose of creating crime of possession of credit card with intent to defraud). However, given our determination that section 12–846(F) did not change the existing law, we find that it was not necessary for the bill's title to provide notice of section 12–846(F)'s purpose.

Our finding that there was no right to a jury trial in paternity actions before section 12–846(F)'s enactment makes it unnecessary for us to address the petitioner's argument that the trial court erred in retroactively applying section 12–846(F) to his pending action.

For the reasons that we have discussed, we previously issued an order accepting jurisdiction of this special action and denying the petitioner the relief that he requested.

BROOKS, P.J., and CONTRERAS, J., concur.