NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

GRAND HOLDINGS LLC, et al., *Plaintiffs/Appellants*,

*v.*

CITY OF PEORIA, *Defendant/Appellee*.

No. 1 CA-CV 19-0379
FILED 2-13-2020

Appeal from the Superior Court in Maricopa County
No. LC2018-000492-001
The Honorable Timothy J. Thomason, Judge

**AFFIRMED**

COUNSEL

Jennings, Haug & Cunningham, LLP, Phoenix
By Julianne C. Wheeler, James L. Csontos
*Counsel for Plaintiffs/Appellants*

Office of the City Attorney, City of Peoria, Peoria
By Amanda Christine Sheridan
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge David B. Gass joined.

---

**C R U Z**, Judge:

¶1        Grand Holdings, LLC and Grand Holdings, Inc. (collectively "Appellants") challenge the superior court's denial of relief in a special action brought against Appellee City of Peoria ("Peoria") stemming from an abatement order requiring demolition of a building located on Appellants' property.  Appellants contend, as they did below, that they did not receive due process in a hearing before Peoria's Board of Building Code Appeals (the "Board").  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        Appellants own a large vacant building in Peoria.  Peoria issued a "Notice and Order to Abate Violation of Code" on August 15, 2018 (the "Order") finding that the building was "unfit for human occupancy" and requiring Appellants to apply for a demolition permit by September 27, 2018, and complete demolition by November 22, 2018.

¶3        Appellants challenged the Order before the Board.  The Board held a hearing at which Grand Holdings member Ron Hassid appeared.  According to the Board's minutes, Peoria's Neighborhood & Human Services Manager, Jack Stroud, showed the Board a "case history and inspection findings" PowerPoint presentation based on a February 2018 report prepared by Willdan, a third-party company that had inspected the property with Hassid present.  The Willdan report said the building "has been abandoned for several years and has not been maintained" and that its condition "lends to a blighting problem and adversely affects public health and safety."  The report recommended "[i]mmediate action," stating it was "apparent the issues . . . have not been taken seriously by the property owner in the past."

¶4        While Hassid agreed the building "need[ed] electrical, plumbing, HVAC, and a fire sprinkler system," he said Appellants were "actively trying to lease or sell the building for the last 10 years" and were "looking for the right tenant to lease [the] property and improve it."  Hassid

also offered a structural engineer's report on the building, which the Board declined to consider because Appellants "did not [timely] submit the report . . . for proper distribution to the board members."

**¶5**      The Board issued a written decision upholding the Order on December 4, 2018, and required Appellants to obtain a demolition permit by January 4, 2019. Appellants filed a special action complaint in superior court and moved to stay the Order, contending the Board had deprived them of due process. They requested a *de novo* trial, alleging Peoria withheld relevant documents and acted "as both the prosecutor and the adjudicator."

**¶6**      Peoria responded to Appellants' motion to stay with affidavits from Stroud and several other Peoria employees, a copy of the Willdan report, and a copy of the PowerPoint presentation. Appellants did not object to these submissions, instead arguing the Board deprived them of due process at the hearing because the Board:

> (1) relied on the PowerPoint presentation but heard no testimony from "the witness who conducted the inspection and wrote the [Willdan] report,"

> (2) did not create or provide a transcript of the hearing, and

> (3) did not issue written findings of fact and conclusions of law.

Appellants also contended the proceedings lacked due process because they had no way to seek court review outside of a discretionary special action.

**¶7**      Following briefing and oral argument, the superior court accepted jurisdiction but denied relief, finding Appellants were "treated fairly and the ruling of the Board was not arbitrary." It further concluded that the evidence before the Board "fully supported the conclusion that the Building is a threat to public safety" and "supported the conclusion that the most reasonable way to address the problem was demolition."

**¶8**      Appellants timely appealed following the entry of final judgment. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1). *State v. Chopra*, 241 Ariz. 353, 355, ¶ 8 (App. 2016).

**DISCUSSION**

¶9        To prevail on a special action complaint, a plaintiff must demonstrate:

> (1) "the defendant has failed to exercise discretion which he has a duty to exercise; or to perform a duty required by law as to which he has no discretion;"
>
> (2) "the defendant has proceeded or is threatening to proceed without or in excess of jurisdiction or legal authority;" or
>
> (3) a "determination was arbitrary and capricious or an abuse of discretion."

Ariz. R.P. Spec. Act. ("RPSA") 3. We conduct a bifurcated review on appeal from a superior court ruling on a special action, determining first whether the superior court accepted jurisdiction. *Stapert v. Ariz. Bd. of Psychologist Exam'rs*, 210 Ariz. 177, 182, ¶ 22 (App. 2005). The superior court did so in this case. We, therefore, review its merits decision for an abuse of discretion but review questions of law *de novo*. *Ottaway v. Smith*, 210 Ariz. 490, 492, ¶ 5 (App. 2005).

I.       Due Process

¶10        "Due process is a fundamental constitutional guarantee; its purpose is to protect persons and property rights from the arbitrary action of government or public officials." *Wallace v. Shields*, 175 Ariz. 166, 174 (App. 1992). It is a flexible doctrine, calling for "such procedural protection as the particular situation demands." *Samiuddin v. Nothwehr*, 243 Ariz. 204, 211, ¶ 20 (2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Id.*

¶11        In resolving a due process challenge, courts must consider:

> (1) the private interests affected;
>
> (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and
>
> (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*State ex rel. Dep't of Econ. Sec. v. Torres*, 245 Ariz. 554, 560, ¶ 23 (App. 2018) (quoting *Mathews*, 424 U.S. at 335). We review whether Appellants received due process *de novo*. *Jeff D. v. Dep't of Child Safety*, 239 Ariz. 205, 207, ¶ 6 (App. 2016).

### A.     Private Interests Affected

**¶12**     Appellants plainly have an interest in the building. *See Mervyn's, Inc. v. Superior Court In & For Maricopa Cty.*, 144 Ariz. 297, 300 (1985) ("It is beyond question that any procedure which deprives an individual of a property interest must satisfy due process."). Appellants contend their interest is "immense," arguing this case is similar to an eminent domain case under either A.R.S. § 12-1111 or A.R.S. § 33-1905, which applies to residential "slum properties." But Peoria does not seek to take any portion of Appellants' land; it instead seeks to exercise its power to "[d]efine nuisances and abate them" and "[c]ompel the owner of any unwholesome or nauseous house or place to clean, abate or remove it." A.R.S. § 9-276(16), (19). As such, Appellants' interest, though significant, is not as strong as it would be in an eminent domain case.

### B.     Risk of Erroneous Deprivation

**¶13**     Appellants contend the risk of erroneous deprivation is "incredibly high" because the Board did not make a record of the hearing or provide written findings of fact or conclusions of law. Appellants argue the hearing record "must be complete enough to reflect a basis for the board's decision so as to enable a meaningful judicial review." *See Schmitz v. Ariz. State Bd. of Dental Exam'rs*, 141 Ariz. 37, 40-41 (App. 1984). *Schmitz* involved an appeal from an administrative agency under A.R.S. § 12-901, *et. seq.*, which does not apply to Peoria or the Board. *See* A.R.S. § 12-901(1) ("Except as provided in section 33-1905, administrative agency or agency does not include . . . any political subdivision or municipal corporation or any agency of a political subdivision or municipal corporation."). Indeed, Peoria was not required to make a verbatim transcript of the hearing. *See* A.R.S. § 38-431.01(B) ("All public bodies shall provide for the taking of written minutes **or** a recording of all their meetings, including executive sessions.") (emphasis added). The Board instead generated hearing minutes, which Peoria filed in superior court. Further, Appellants had the ability to record the hearing and create a transcript at their own expense. *See* A.R.S. § 38-431.01(F).

**¶14**     Appellants also argue the Board was obligated to make "findings of basic facts." *Civil Serv. Comm'n of City of Tucson v. Livingston*,

22 Ariz. App. 183, 188-89 (1974). In that particular case, however, the applicable rules required such findings. *See id.* at 188 ("Rule 12, [section] 4(d) of the Rules and Regulations of the Civil Service Commission provides that the decision of the Commission '. . . shall consist of written findings of fact and its order for the disposition of the case.'"). Appellants cite no such rules applicable to hearings before the Board. Absent any such rule, a finding of the ultimate fact—that there were adequate grounds to support the Order—is sufficient. *Cox v. Pima Cty. Law Enf't Merit Sys. Council*, 25 Ariz. App. 349, 350 (1975). Moreover, Appellants offer no argument to suggest these procedural requirements would reduce the risk of error *in the hearing process*. Instead, they argue the requirements would make appellate review easier.

### C.     Peoria's Interest

**¶15**       Appellants broadly contend they "cannot fathom how providing findings of fact and conclusions of law, allowing [Appellants] to present evidence or allowing for cross-examination of adverse witnesses who develop testimony used at the hearing would burden [Peoria] moving forward." Converting Board hearings into full-blown trials with subpoena power, compelled witness testimony, and cross-examination would significantly increase Peoria's burden. *See Mathews*, 424 U.S. at 348. The government and the public have an interest "in conserving scarce fiscal and administrative resources . . . that must be weighed. At some point [the cost may outweigh] the benefit of an additional safeguard to the individual affected by the administrative action and to society in terms of increased assurance . . . ." *See id.* Appellants do not show how the benefits of their proposed numerous additional procedures would offset that increased burden.

## II.     The *Deuel* Factors Do Not Apply

**¶16**       Appellants also rely on *Deuel v. Arizona State School for the Deaf & Blind*, where this court identified seven factors "required for a valid due-process hearing" in a public employment termination case:

> 1.     adequate written notice of the specific grounds for termination;

> 2.     disclosure of the evidence supporting termination, including the names and nature of the testimony of adverse witnesses;

3. the opportunity to confront and cross-examine available adverse witnesses;

4. the opportunity to be heard in person and present evidence;

5. the opportunity to be represented by counsel;

6. a fair-minded and impartial decision maker; and

7. a written statement by the fact-finders as to the evidence relied upon and the reasons for the determination made.

165 Ariz. 524, 527 (App. 1990) (internal citations and quotation marks omitted). Appellants contend five of these factors are absent in this case but cite no caselaw applying the factors outside of the public employment context.

¶17 As noted above, due process varies depending on the setting, and we do not apply an inflexible set of factors to all possible situations. *Dep't of Child Safety v. Beene*, 235 Ariz. 300, 305, ¶ 11 (App. 2014); *see also In re MH-2008-000867*, 225 Ariz. 178, 182, ¶ 12 (2010) ("'[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.") (quoting *Mathews*, 424 U.S. at 334). Nonetheless, Appellants' *Deuel* arguments merit brief discussion.

A. Disclosure of the Evidence

¶18 We begin with their contention that Peoria did not timely disclose its intent to rely on the Willdan report at the hearing. Appellants, through Hassid, were present for the Willdan inspection and acknowledged they had received and reviewed a copy of the report in their application to appeal the Order. Indeed, one of the stated reasons for appealing was they "strongly disagree[d]" with the Willdan report. Even assuming Peoria was obligated to formally disclose its intent to rely on the Willdan report, Appellants have not demonstrated either lack of knowledge or surprise, or identified any prejudice resulting from the introduction of the report at the hearing.

B. Opportunity to Confront and Cross-Examine Witnesses

¶19 Appellants also contend they were denied the opportunity to call and cross-examine the Willdan report's author. They do not contend,

however, that they raised this issue before the Board. In any event, confrontation and cross-examination "are not rights universally applicable to all hearings." *Wolff v. McDonnell*, 418 U.S. 539, 567 (1974); *Beene*, 235 Ariz. at 305, ¶ 11. Appellants' citation to an article discussing hearing procedures before the Office of Administrative Hearings—which this hearing was not—is not persuasive.

¶20 Similarly, Appellants' reliance on *Application of Levine*, 97 Ariz. 88 (1964) is misplaced. There, the Arizona Supreme Court reaffirmed that a state bar applicant denied admission on character and fitness grounds has the right "to produce witnesses and evidence on his own behalf and, if there are accusers and adverse witnesses, to be confronted by and to examine them." *Id.* at 91-92. In contrast, Appellants here were not "excluded by state action from a business, profession or occupation" as Levine was. *Id.* at 91. Additionally, Appellants could have requested the presence of a Willdan representative at the hearing to ask any relevant questions but failed to do so.

### C. Opportunity to Present Evidence

¶21 Appellants also broadly contend the Board did not allow them to present evidence, but they only cite the Board's refusal to consider their structural engineer's report. Significantly, they cite no authority to suggest the Board's requirement that Appellants timely provide documents to the Board in advance of a hearing is unreasonable or violates due process. And as noted above, Appellants, through Hassid, appeared and spoke at the hearing.

### D. Fair-Minded and Impartial Decisionmaker

¶22 Appellants also contend the Board was not a fair-minded and impartial decisionmaker because one Peoria employee served as an assistant to both the Board and the city's Development and Engineering Department. *See Horne v. Polk*, 242 Ariz. 226, 231, ¶ 16 (2017) ("At minimum, in the context of a regulatory agency adjudication, a process that involves the same official as both an advocate and the ultimate administrative decisionmaker creates an appearance of potential bias."). In contrast, this Peoria employee was not a Board member, and Appellants do not contend she took part in the Board's decision to uphold the Order.

E.  Written Statement of the Evidence Relied Upon and the Reasons for the Decision

¶23  Appellants also contend the Board's lack of written findings of fact and conclusions of law violates due process, again citing *Livingston*. As noted above, *Livingston* is distinguishable because, unlike here, the factfinder in that case was required by administrative rule to make such findings. *Livingston*, 22 Ariz. App. at 188.

¶24  In summary, Appellants do not dispute that (1) Hassid was present for the Willdan inspection; (2) they were served with the Order; (3) they received the Willdan report in advance of the Board hearing; and (4) they had the opportunity to, and did, present objections and arguments to the Board. We thus conclude, as the superior court did, that Appellants received due process in connection with the Board hearing. *See People ex rel. Babbitt v. Herndon*, 119 Ariz. 454, 457 (1978) ("All that is necessary is that the procedure be tailored in light of the governmental and private interests that are involved, to insure that appellee is given a meaningful opportunity to present his case.").

III.  The Board's Decision Was Not Arbitrary or Capricious

¶25  Finally, Appellants contend the Board's decision upholding the Order was arbitrary and capricious, reiterating their argument that the Board did not prepare or provide a transcript. *See* RPSA 3(c). We have previously addressed and rejected that argument.

¶26  Appellants also contend the Order improperly relied on the International Property Maintenance Code ("IPMC") as adopted by Peoria, which Appellants contend only applies to occupied structures. No such limitation appears in the IPMC. *See* Peoria City Code § 18-4(A) (adopting the 2015 IPMC); IPMC § 101.2 ("The provisions of this code shall apply to all existing residential and nonresidential structures and all existing premises.").

¶27  Appellants also contend the sections of the IPMC on which Peoria relied "allow for repair," citing IPMC § 107.2(4)'s requirement that a notice of violation shall include "a correction order allowing a reasonable time to make the repairs and improvements required to bring the dwelling unit or structure into compliance." Appellants did not raise this argument below, and we generally do not consider arguments raised for the first time on appeal. *K.B. v. State Farm Fire & Cas. Co.*, 189 Ariz. 263, 268 (App. 1997). Nonetheless, the IPMC also authorizes code officials to order the demolition of a structure if it is "so deteriorated or dilapidated or has

become so out of repair as to be dangerous, unsafe, insanitary or otherwise unfit for human habitation or occupancy."  IPMC § 110.1.  The Willdan report contains ample evidence to support the superior court's finding that "the condition of the Building is, to put it mildly, horrible" and that it was "very unsafe."

**¶28**       Appellants also argue the Board failed to comply with A.R.S. § 9-500.21, which sets forth procedures for hearing and determining civil offenses.  They do not show, however, that any of the code violations cited in the Order constitute a civil offense.  The superior court did not abuse its discretion in finding the Board's order was not arbitrary or capricious. *Ottaway*, 210 Ariz. at 492, ¶ 5.

IV.    Attorneys' Fees and Costs on Appeal

**¶29**       Appellants request its attorneys' fees and costs incurred in this appeal under several statutes, each of which allows a successful party to recover fees or costs in certain circumstances.  A.R.S. §§ 9-832(1), 12-341, 12-342, 12-348(A), 12-2030(A).  Appellants are not the successful parties; accordingly, we deny their request.

**CONCLUSION**

**¶30**       We affirm the superior court's judgment.  Peoria may recover its taxable costs incurred in this appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA